EBENEZER S. EGGLESTON AND JACOB KLEINHANS v. FRANCIS D. BOARDMAN.

*Attorneys—Measure of Compensation.*

Attorneys and solicitors must exercise reasonable skill, care, discretion and judgment in the conduct and management of the cases in which they are retained.

In fixing the value of an attorney's services, his professional skill and standing, his experience, the nature and character of the questions raised in the case, and the result must all be considered. The question is, what were the services reasonably worth, and this must be determined from the usual prices charged for similar services.

The amount charged by an attorney in a given case is not admissible in evidence to fix the value of the services rendered in the same case by the attorney for the other parties; nor does the amount paid in a particular case necessarily fix the amount in all like cases.

Retainers are universally charged and need not rest upon a special contract; they are recoverable under the common counts without declaring specially. Details are supplied by the bill of particulars.

A client is entitled to the personal services of his attorney upon the argument. But the retainer of one member of a firm is a retainer of all, and unless otherwise stipulated, the cause may be argued and conducted by any one of them. And if a client knowingly permits his case to be argued by a person in the service of his attorneys and under their direction, he is presumed to have consented thereto.

A charge should be taken altogether, without giving undue weight to any portion of it.

Case made from Kent. Submitted April 11. Decided June 12.

ASSUMPSIT. The facts are stated in the opinion.

*Eggleston & Kleinhans,* for plaintiffs, claimed that evidence of the nature of the suit and of what it involved was admissible (*Kentucky Bank v. Combs,* 7 Penn. St., 543; *Vilas v. Downer,* 21 Vt., 419; *Succession of Macarty,* 3 La. Ann., 517; *Webb v. Browning,* 14 Mo., 354); and that attorneys may employ assistance. *Brigham v. Foster,* 7 Allen, 419; *King v. Pope,* 28 Ala., 601; *Smith v. Lipscomb,* 13 Tex., 532; *Briggs v. Georgia,* 10 Vt., 68; *Fenno v. English,* 22 Ark., 170; *Goodall v. Bedel,* 20 N. H., 205.

*Taggart & Wolcott* for defendant. A party is entitled to the services of the attorney he employs, particularly for special work to which he is peculiarly adapted, and the attorney has no implied authority to retain associate counsel and charge his client for their fees. *Paddock v. Colby,* 18 Vt., 485; *Voorhies v. Harrison,* 22 La. Ann., 85.

MARSTON, J. Plaintiffs brought an action upon the common counts to recover for services rendered as attorneys in several different causes.

In considering the several questions raised in this case, we will examine them in their order as arranged in the brief of defendant's counsel.

I. The first, third, sixth and seventh exceptions depend upon the same question of law, and are fairly stated by defendant's counsel in the following request, which they desired the court to give the jury but which was refused:

"When an attorney is employed to argue a case in the supreme court, the value of his services in the absence of any express contract, is the amount of labor performed in the case, without any reference to the value of the property in litigation."

In support of this proposition counsel insist that in the absence of a special contract, one day's work in an impor-

tant cause is worth no more than the same services in a suit of less magnitude; that as well might any laborer or mechanic charge extra wages per day when fortunate enough to secure a large job; that where work requires a different kind of skill or workmanship, then, of course, such charge should be made as the skill required would command, but the same skill and workmanship upon an important piece of work, would bring no more per day than when it was applied to a lesser job; and that the same knowledge of practice and rules of law are required of the attorney or solicitor in one case as the other.

We cannot concur in this reasoning, the effect of which, if adopted, would be to establish a scale of compensation for professional services, when the amount to be paid was not specially agreed upon, dependent upon the skill and professional standing of the person employed, and the actual time by him devoted to the work, but without any reference to the real nature of the questions he was called upon to investigate, or the amount in controversy, and the increased care and responsibility arising therefrom.

Whenever an attorney or solicitor is retained in a cause, it becomes his implied duty to use and exercise reasonable skill, care, discretion and judgment in the conduct and management thereof. It would be very difficult to lay down any definite rule or principle, applicable alike to all cases, as to the care and skill required. Each case must be governed by its own peculiar facts and circumstances, and the amount in controversy must in every case play a very important part in the determination of this question. The lapidary who cuts, polishes and engraves a precious stone of exceedingly great value, must exercise much more care, skill and judgment than would be required in the performance of like work upon one of but ordinary or little value, and he would be entitled to demand and receive a correspondingly increased compensation in the former case, than he would in the latter, although the time spent by him in each case was the same. The common carrier charges much more for carrying jewels, gold, bank-bills or valuable papers, than for more bulky and less valuable things, although

the latter may be vastly more heavy, cumbersome and in fact much more expensive to transport.

The right to increased compensation in these cases and in many others that might be mentioned, is universally recognized. No one questions such right, yet what causes the difference in compensation? Nothing but the increased responsibility dependent upon the value of the article, in the case of the carrier; in the other case, the same fact, coupled, perhaps, with the skill of the person who performs the work.

The artist who transfers to the canvas the living likeness, destined perhaps to become immortal as a work of art, is entitled to a vastly higher compensation than he would be for spending the same time in painting buildings, even although the *quantum* of work done in the latter case might be estimated by the square yard. The recompense to be paid the sculptor who conceives, molds and produces his masterpieces of form cannot be measured and fixed by a standard based alone upon the time he spent in their production. Nor in cases where they were merely executed under his direction, could his reward be fixed upon the same standard as of those who performed the manual labor under his personal supervision. The productions of the composer, the poet and the author cannot be valued by the time apparently spent in their preparation. They are formed of a combination of ideas which may have cost their authors years of application to complete.

The lawyer, who in order to excel in his profession, has devoted years to preliminary studies and has spent much labor and money to thoroughly fit him for his calling, so that he might be able to act as an advocate in court, or as a counsellor to guide and direct others,—to furnish them from his vast storehouse of knowledge, ripened and perfected from long experience, with such ideas and suggestions which, when carried out and followed up, would lead to success,— how shall his services be estimated?

It is very evident that the responsibility, the care, anxiety and mental labor is much greater in a case where the amount in controversy is large than where it is insignificant,

although perhaps the same questions might be raised in each case, or the more difficult questions arise in the case where the amount was of but slight consequence. Nor is this responsibility, care and mental labor dependent alone upon the number of hours or days which may be given to the preparation and trial or argument of a case. This responsibility and mental anxiety is not so imaginative and shadowy that it should not be considered in arriving at a proper compensation to be allowed in fixing the value of the services rendered. Nor is the number of days which may be given to the preparation of a case alone, even if the exact time could be ascertained in any given case, a governing test. Twelve hours spent in the study of a novel will not usually be as exhausting as the same time devoted to the study of Coke upon Littleton would be, even although a great deal more ground might be gone over in the former, than would in all probability be in the latter case.

We can see no analogy between this kind or class of work and that performed by the ordinary laborer, nor can the creditable fact, that attorneys generally, where the amount in controversy is small, or their client is poor, charge and receive much less than their services may in fact have been worth, prevent their recovering a reasonable compensation in proportion to the magnitude of the interests committed to their care. In fact in all cases, the professional skill and standing of the person employed, his experience, the nature of the controversy, both in regard to the amount involved and the character and nature of the questions raised in the case, as well as the result, must all be taken into consideration in fixing the value of the services rendered. *Vilas v. Downer*, 21 Vt., 419; *Kentucky Bank v. Combs*, 7 Pa. St., 543; *Stanton et al. v. Embrey, Adm'r*, 93 U. S. (3 Otto), 557.

II. It appeared that a portion of the services performed was in the preparation and argument of a certain cause in the Supreme Court wherein Charles W. Taylor was complainant and Francis C. Boardman was one of the defendants. Mr. Taylor was called as a witness and testified as

to the person whom he employed to prepare the brief and argue the cause on his behalf, and was then asked what he paid' his attorney for such services.    This was objected to and the objection sustained.    The amount charged by an attorney in a certain case, cannot fairly be considered· as ·evidence competent to fix the value of the services rendered by the attorney for the other parties in the same case.    The amount paid in a particular case cannot be considered or accepted as the proper amount in all like cases.    It is not like the sale of certain commodities, where the price at which an article sold may have a tendency to fix or show the market price.    There may be peculiar circumstances or elements which assisted in fixing the amount paid in one case, which would not exist in another, or even between counsel of equal standing in the same case, both in the character of the work, and in the amount and kind of preparation required.    The question is what were plaintiff's services reasonably worth, taking into consideration the facts and circumstances already adverted to, and this must be determined from the prices *usually* charged for similar services.

III.    We cannot say that there was a total want of evidence, or so slight that it should not have been submited to a jury, tending to show that Ferris was employed by plaintiffs to re-argue the case in the Supreme Court.    The refusal to charge as requested upon this point was therefore correct.

IV.    It is next claimed that plaintiffs cannot charge and recover a retainer without a special contract, and that the right to receive the same must be declared upon specially. There is no force in this position.    Retainers are uniformly and universally charged, and the same may be recovered under the common counts.    If any thing farther or more definite is required, it is furnished by the bill of particulars.

V.    The eighth and eleventh exceptions are based upon the same principle, viz.:    the right of a party to the personal services of the attorney he employs in the argument of a cause.    This is unquestionably correct.    The attorney

who has been retained to argue a cause must personally perform that duty, and he cannot entrust this duty to another, or, as said, let the case out on shares. Yet this even must be carefully applied. The retainer of one member of a firm is a retainer of all the members, and unless otherwise stipulated the cause might be conducted and argued by any one of them. So under the retainer of an attorney or of a firm of attorneys, much of the business necessarily to be done in the preparation of a cause, may be done by them or any one in their employ and under their direction, and it will be found extremely difficult to draw the line and say just what must be performed by the person or firm retained and what may be done under their direction by persons in their employ. From necessity a firm engaged in active practice and doing a large business must permit much of the work to be done by others, under their direction. A person or firm is very often retained for the purpose of securing their counsel and assistance, which usually is the most important part, and without any expectation that the services to be performed will extend beyond this. And where the client stands by and permits work to be done, or an argument to be made on his behalf by a person in the service of, and under the direction of the attorneys he retained, we think it may very fairly be assumed from his silence and acquiescence that he consented thereto. We think the charge of the court upon this part of the case was unobjectionable. (See charge below.)*

---

* "The claim of the plaintiff includes, among other charges, two charges, I believe,—two large ones—for services in the Supreme Court of this State, in the case of *Charles W. Taylor v. Boardman and Rood*, for which case the bill of particulars claims for retainer of $500, and for services in preparing and arguing the case, $750. The services are the preparation of the brief and the final argument of the case before the Supreme Court of this State. One of the questions in connection with the claim for services in this suit is, whether the defendant, having engaged the plaintiffs and not Mr. Ferris—whether under that contract Mr. Ferris could perform the work, or any part of it, and if so, if you find that the greater portion of the work was done by Mr. Ferris, whether plaintiffs can recover for such work in this case. It is true, gentlemen, that a retainer of an attorney is a personal contract. The relation between attorney and client is a confidential relation, and undoubtedly when a man hires a lawyer to conduct for him a cause, he expects and is entitled to the personal attendance of the attorney employed. It does not necessarily follow from

The expression contained in the charge that plaintiffs, in making the charges in their books, undoubtedly charged what they thought their services were worth, when taken in connection with other portions of the charge, could have had no undue influence with the jury. It is not expected that each clause and sentence in a charge shall be correct to an absolute certainty. The charge is to be taken as a whole without any undue weight being given to any portion thereof. We do not say that this remark as made was

that rule that everything which is done in the cause must be done by the hand of that attorney, for if the rule was extended so far as that, then the attorney employed must copy every paper which is copied in the cause, and go about the streets and serve every notice upon the opposite attorney, make every stroke of the pen which is required to be made in the cause, either in the making up of the pleadings, taking minutes of the testimony, or making the brief. Any such claim as that, of course, is simply ridiculous. But the client is undoubtedly entitled to the personal services of his attorney at the hearing. Now I have stopped, gentlemen, to state those rules, not because I deem it necessary in this cause to do so, but simply because they have been spoken of, and I believe that such are the correct rules.

"So far as this cause is concerned, gentlemen, it seems to me the act of Mr. Boardman has settled that question. Up to the last moment before Mr. Ferris assumed to argue the cause mentioned in the Supreme Court, Mr. Boardman might have prevented the argument from being made by him. He had the control of it. It was for him to say whether Mr. Ferris should make an argument in his cause. I do not know whether it appears in evidence that Mr. Ferris was attorney of record or solicitor of record in that cause or not. If he was of record, and the client had reason for not wishing him to make an argument, it was his privilege to have applied to the court for a substitution of solicitors, and the court would undoubtedly have protected him in the last moment, if he had applied to have had it done. As appears by the testimony in the case, he did not do that. Having the power to say whether Mr. Ferris should argue or not, he permitted him to argue the case, and having done so, he is liable for the value of the services thus performed, so that while it is a general rule that the contract between client and attorney is personal, yet I do not believe that it is applicable to this question raised by the defense.

"In passing upon the question as to how much should be allowed for those services performed by Mr. Ferris, you should allow in favor of the plaintiffs the fair value of the services actually performed, and you should take into consideration all the circumstances in the case as bearing upon that question. The fact that Mr. Ferris did certain things and Mr. Eggleston did not do the same things, and if you consider that the value of the services was less because Mr. Ferris did them under the supervision of Mr. Eggleston than if Mr. Eggleston had done them himself alone entirely, of course that must affect your judgment just so much in amount, for you are to allow for the actual services performed in the manner in which they were performed."

objectionable,—we content ourselves with saying that in no event, from its surroundings, could it have injured the defendant.

As we discover no error, the judgment must be affirmed, with costs.

The other Justices concurred.