### SIMKO v BLAKE

Docket No. 97579. Argued October 5, 1994 (Calendar No. 8). Decided May 23, 1995.

Arthur L. Simko, Margaret A. Simko, and Tara M. Simko brought a legal malpractice action in the Wayne Circuit Court against Marvin Blake, alleging that he failed to adequately represent Arthur in an underlying criminal action. The court, Robert J. Colombo, Jr., J., granted summary disposition for the defendant, finding that the defendant's actions were not a proximate cause of the plaintiffs' injuries. The Court of Appeals, CONNOR, P.J., and D. E. HOLBROOK, JR., J. (McDONALD, J., dissenting), affirmed (Docket No. 135977). The plaintiffs appeal.

In an opinion by Justice MALLETT, joined by Justices CAVANAGH, BOYLE, and RILEY, the Supreme Court *held:*

Attorneys must only act as would an attorney of ordinary learning, judgment, or skill under the same or similar circumstances.

1. In order to state an action for legal malpractice, the plaintiff must allege the existence of an attorney-client relationship, negligence in the legal representation, that the negligence was a proximate cause of an injury, and the fact and extent of the injury alleged.

2. An attorney must use reasonable skill, care, discretion, and judgment and behave as would an attorney of ordinary learning, judgment, or skill under the same or similar circumstances, consistent with prevailing Michigan law. Where an attorney so acts, mere errors in judgment generally are not grounds for a malpractice action. However, an attorney is not bound to insure or guarantee the most favorable outcome possible or exercise extraordinary diligence.

3. In this case, the defendant acted as would an attorney of ordinary learning, judgment, or skill under the same or similar circumstances, and his alleged acts and omissions were a matter of trial tactics based on reasonable professional judg-

REFERENCES

Am Jur 2d, Attorneys at Law § 199.
See ALR Index under Malpractice By Attorney.

ment. As a matter of law, the plaintiffs' allegations could not support a breach of duty because they are based on mere errors of professional judgment and not breaches of reasonable care.

Affirmed.

Justice LEVIN, joined by Chief Justice BRICKLEY, dissenting, stated that while a lawyer need only act as would a lawyer of ordinary learning, judgment, diligence, or skill under the same or similar circumstances, a lawyer must so act. In holding as a matter of law that the defendant is not subject to liability because it was ultimately determined that he interposed a legally adequate defense even though, had he avoided error, the plaintiff would not have been convicted and served over two years in prison, the majority requires less of the defendant than the conduct of a lawyer of ordinary learning, judgment, or skill under the same or similar circumstances. Whether an error of judgment, or a mere error of judgment, constitutes negligence depends on whether a lawyer of ordinary learning, judgment, diligence, or skill would have avoided the error or mere error of judgment, generally a question for the trier of fact.

If lawyers were omniscient about trial and appellate court rulings that will be forthcoming in a particular case, they would know what motions were unnecessary. If trial judges were omniscient about appellate court rulings, they would rarely err. It is because a lawyer cannot assuredly predict such rulings that an ordinarily careful, prudent, diligent, and skillful lawyer burdens the legal system with motions that, in retrospect, may have been unnecessary. The plaintiffs are not complaining that the defendant failed to file a motion, additional or otherwise, but, rather, about his asserted lack of diligence in preparing for trial, and in failing to call witnesses during trial.

Lowering the standard of care for lawyers will not reduce the burden of over-lawyering by lawyers who fail to recognize their professional responsibility or raise the level of professional responsibility.

An action for legal malpractice may be maintained against a lawyer who represented a plaintiff in a criminal matter without establishing that ineffective assistance was rendered. The plaintiff at least is entitled to maintain this damage action for legal malpractice if he can establish that the defendant failed to render effective assistance within the meaning of the ineffective assistance standard.

Justice WEAVER took no part in the decision of this case.

201 Mich App 191; 506 NW2d 258 (1993) affirmed.

ATTORNEY AND CLIENT — MALPRACTICE — STANDARD OF CARE.

    Attorneys must only act as would an attorney of ordinary learning, judgment, or skill under the same or similar circumstances.

*E. Robert Blaske* and *Thomas H. Blaske* for the plaintiffs.

*Plunkett & Cooney, P.C.* (by *Christine D. Oldani, Mary Massaron Ross,* and *Patrick M. Barrett*), for the defendant.

MALLETT, J. This case presents the question whether an attorney's duty to his client extends beyond what is legally adequate to win a client's case. We hold that attorneys must only act as would an attorney of ordinary learning, judgment, or skill under the same or similar circumstances.

Defendant Blake raised a complete defense, did what was legally sufficient to fully vindicate his client's interest, and acted as would an attorney of ordinary learning, judgment, or skill under the same or similar circumstances. His alleged acts and omissions were trial tactics based on good faith and reasonable professional judgment. Further, no amount of factual development could reveal a case of malpractice. Thus, we affirm the decision of the Court of Appeals in favor of the defendant.

I

Plaintiffs Arthur Louis Simko, Margaret Simko, and Tara Marie Simko filed suit against defendant Marvin Blake, an attorney, alleging that the defendant committed professional malpractice in failing to adequately represent Arthur Simko in a prosecution of possessing over 650 grams of co-

caine, MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i), and possession of a firearm in the commission or attempt to commit a felony, MCL 750.227b; MSA 28.424(2). Although the defendant was convicted and the conviction eventually was reversed by the Court of Appeals, Mr. Simko spent more than two years in prison.

In the underlying criminal case, on the night of March 6, 1987, a state police officer observed a speeding car traveling with its lights flashing in an apparent effort to attract the officer's attention. The car exited the highway and stopped to wait for the police car. The driver of the vehicle alighted from his car and told the police that the passenger, Arthur Simko, needed medical attention.

Plaintiff appeared flushed, was perspiring, and his breathing was labored. The officer summoned an ambulance. While waiting for the ambulance to arrive, the officer discovered what appeared to be drug paraphernalia on the floor of the car. A further search of the car revealed a cup containing cocaine residue, a bullet in plaintiff's pocket, a pistol in the glove compartment, a pistol in the trunk, several rounds of ammunition, and 988 grams of a substance containing cocaine.

Arthur Simko was represented by Marvin Blake. At the close of the prosecution's case, and again at the close of defendant's case, Mr. Blake moved for a directed verdict on the ground that the evidence was insufficient to convict plaintiff. The trial judge denied both motions. Mr. Simko was ultimately found guilty by the jury and sentenced to mandatory sentences of life without parole plus two years.

Arthur Simko then retained another attorney and appealed his conviction. The Court of Appeals

reversed; however, by that time, he had already served two years of his prison sentence.[1]

At the time plaintiff filed his appeal, he also filed a legal malpractice action against defendant. Arthur Simko alleged that the defendant failed to properly investigate his case and failed to properly prepare to defend him.[2] Specifically, Mr. Simko

[1] See *People v Simko,* unpublished opinion per curiam, issued November 29, 1989 (Docket No. 105873).

[2] Plaintiff alleged the following:

    a. Failed to adequately and properly investigate Mr. Simko's case;

    b. After some three months involvement with the case had, at that point, failed, refused and/or neglected to discover the identity and whereabouts of essential witnesses necessary to substantiate Mr. Simko's defense;

    c. At trial, another four months after the pre-trial conference and seven months since he had first become involved, still had not done anything to assist Mr. Simko in defense of the charges against him;

    d. After claiming to have two or three defense witnesses to produce at trial, he only produced Arthur Louis Simko himself as a witness;

    e. Failed to call the personal physician of Mr. Simko, Dr. Michael Karbal, of Troy, who had been treating Mr. Simko for a pinched nerve as a result of a car accident and who had prescribed for him Valium 10 three times per day and Tylenol 4 three times per day which he was taking at the time of his arrest and which would fully explain his medical condition at that time;

    f. Failed to call Margaret A. Simko who had several times seen her husband in a physical condition similar to the one he was in at the time of his arrest as a result of taking his prescribed medications;

    g. Failed to call Margaret A. Simko who could confirm Mr. Simko's story regarding being asked by the insurance agent to go south with him;

    h. Failed to call Margaret A. Simko who could confirm that none of the luggage in the trunk was owned by any member of the Simko family, and that in fact Mr. Simko had just rolled up his clothes in a ball and taken them;

    i. Failed to ascertain the pertinent information from a plastic bag which was in police possession and which contained on it the name and address of the hotel in Florida in the lobby of which Mr. Simko had spent the entire day, so as to instead allow Mr. Simko to be impeached during his trial testimony by the fact that he could not then

alleged that Mr. Blake did not produce any witnesses in his defense besides Mr. Simko himself, failed to produce plaintiff's personal physician who had been treating him for a pinched nerve and who prescribed medication that would have offered an explanation of his medical condition at the time of arrest, and failed to provide Mr. Simko with the name and location of the hotel where Mr. Simko had spent the day before he was arrested that may have protected him from impeachment.

The malpractice action was dismissed by the trial court when it granted defendant's motion for summary disposition. The trial court stated:

> The proximate cause of his conviction was the trial court's error in denying the motion for directed verdict in favor of the defendant in the underlying case.
>
> The Court of Appeals, in holding that a directed verdict should have been granted indirectly not only stated that the trial court here erred but that the jury erred as well.
>
> By holding that the standard was satisfied for the granting of a motion for directed verdict, in effect, the Court of Appeals held that a reasonable well-instructed jury could not convict based upon the evidence presented during the course of the trial.
>
> The jury in the underlying case by virtue of the Court of Appeals decision acted unreasonably in light of evidence presented for the jury to consider.
>
> As a result, the defendant Blake cannot possibly be held responsible for the acts of an unreasonable jury.

remember the name of the hotel or the town that it was in;

j. Failed to provide effective assistance of counsel; and

k. Failed to provide reasonably prudent and proper legal services as required by Michigan law.

The Court of Appeals affirmed,[3] stating that

> [b]y challenging the sufficiency of the evidence
> against Simko, Blake raised a complete and ulti-
> mately successful defense to both charges. . . .
> Blake was not Simko's insurer against all possible
> misfortune . . . . His duty was to raise an ade-
> quate defense to the criminal charges, not to pro-
> tect Simko from judge and jury. [201 Mich App
> 191, 195; 506 NW2d 258 (1993).]

We affirm the decision of the Court of Appeals
and hold that Marvin Blake fulfilled his duty to
Arthur Simko.

II

We hold that defendant's motion for summary
disposition was properly granted by the trial court
because the plaintiffs failed to state a claim upon
which relief can be granted. Plaintiffs' complaint
and pleadings failed to state a breach of duty.

Pursuant to MCR 2.116(C)(8), a motion for sum-
mary disposition is granted if the claim is so
clearly unenforceable as a matter of law that no
factual development could possibly justify recov-
ery. A motion of summary disposition is tested on
the pleadings alone, and all factual allegations
contained in the complaint must be accepted as
true. *Beaudin v Michigan Bell Telephone Co,* 157
Mich App 185, 187; 403 NW2d 76 (1986); *Marcel-*

---

[3] In a dissenting opinion, Judge McDONALD stated that the trial
court erred when it granted defendant Blake's motion for summary
disposition. Judge McDONALD thought that it was improper for the
trial court to find that plaintiff's injuries were caused by the criminal
trial judge's error in not granting plaintiff's motion for summary
disposition. Judge McDONALD pointed out that there could be more
than one proximate cause of the same injury. However, he agreed
with the majority that an attorney does not have the duty to do more
than what is legally adequate to vindicate a client's interests. 201
Mich App 191, 195; 506 NW2d 258 (1993).

*letti v Bathani,* 198 Mich App 655; 500 NW2d 124 (1993).

III

In order to state an action for legal malpractice, the plaintiff has the burden of adequately alleging the following elements:

> (1) the existence of an attorney-client relationship;
> (2) negligence in the legal representation of the plaintiff;
> (3) that the negligence was a proximate cause of an injury; and
> (4) the fact and extent of the injury alleged. [*Coleman v Gurwin,* 443 Mich 59, 63; 503 NW2d 435 (1993).]

See *Espinoza v Thomas,* 189 Mich App 110, 115; 472 NW2d 16 (1991); *McCluskey v Womack,* 188 Mich App 465, 473; 470 NW2d 443 (1991); *Pantely v Garris, Garris & Garris, PC,* 180 Mich App 768, 778-779; 447 NW2d 864 (1989). See also *Charles Reinhart Co v Winiemko,* 444 Mich 579, 586; 513 NW2d 773 (1994).

The first element the plaintiff must prove is "duty." "Duty" is any obligation the defendant has to the plaintiff to avoid negligent conduct. *Moning v Alfono,* 400 Mich 425, 432; 254 NW2d 759 (1977). In negligence actions, the existence of duty is a question of law for the court. *Antcliff v State Employees Credit Union,* 414 Mich 624, 640; 327 NW2d 814 (1982). See also *Moning, supra.*

In legal malpractice actions, a duty exists, as a matter of law, if there is an attorney-client relationship. "*Whenever an attorney or solicitor is retained in a cause,* it becomes his implied duty to use and exercise reasonable skill, care, discretion

and judgment in the conduct and management thereof." *Eggleston v Boardman*, 37 Mich 14, 16 (1877) (emphasis added); *Babbitt v Bumpus*, 73 Mich 331; 41 NW 417 (1889). See also MRPC 1.0 to 1.3. In the instant case, the parties admitted that an attorney-client relationship existed between Mr. Simko and Mr. Blake. Thus, the issue is not whether a duty existed, but rather the extent of that duty once invoked.

It is well established that "[a]n attorney is obligated to use reasonable skill, care, discretion and judgment in representing a client." *Lipton v Boesky*, 110 Mich App 589, 594; 313 NW2d 163 (1981), citing *Eggleston, supra* at 16; *Joos v Auto-Owners Ins Co*, 94 Mich App 419, 422; 288 NW2d 443 (1979). Further, according to SJI2d 30.01, all attorneys have a duty to behave as would an attorney "of ordinary learning, judgment or skill . . . under the same or similar circumstances . . . ."

An attorney has the duty to fashion such a strategy so that it is consistent with prevailing Michigan law. However, an attorney does not have a duty to insure or guarantee the most favorable outcome possible. An attorney is never bound to exercise extraordinary diligence, or act beyond the knowledge, skill, and ability ordinarily possessed by members of the legal profession. See 7 Am Jur 2d, Attorneys at Law, § 199, p 249, n 92, citing *Babbitt, supra; Goodman & Mitchell v Walker*, 30 Ala 482 (1857); *Glenn v Haynes*, 192 Va 574; 66 SE2d 509; 26 ALR2d 1334 (1951); *Ward v Arnold*, 52 Wash 2d 581; 328 P2d 164 (1958).

In *Babbitt, supra* at 337, this Court held that

[a] lawyer is not an insurer of the result in a case in which he is employed, unless he makes a special contract to that effect, and for that purpose. Neither is there any implied contract, when he is

employed in a case, or any matter of legal business, that he will bring to bear learning, skill, or ability beyond that of the average of his profession.

See also *Bessman v Weiss,* 11 Mich App 528; 161 NW2d 599 (1968).

Furthermore, in *Joos, supra* at 422, the Court of Appeals held that an attorney only must act with the skill, learning, and ability of the "average practitioner of law." See also *Basic Food Industries, Inc v Grant,* 107 Mich App 685, 690; 310 NW2d 26 (1981), and *Lipton, supra.*

To require attorneys, or other professionals, to act over and beyond average skill, learning, and ability, would be an unreasonable burden on the profession and the legal system.[4] As the Court of Appeals stated:

There is no motion that can be filed, no amount of research in preparation, no level of skill, nor degree of perfection that could anticipate every error or completely shield a client from the occasional aberrant ruling of a fallible judge or an intransigent jury. To impose a duty on attorneys to do more than that which is legally adequate to fully vindicate a client's rights would require our legal system, already overburdened, to digest unnecessarily inordinate quantities of additional motions and evidence that, in most cases, will prove to be superfluous. And, *because no amount of work can guarantee a favorable result, attorneys would never know when the work they do is sufficiently more than adequate to be enough to protect not only their clients from error, but themselves from liability.* [201 Mich App 194. Emphasis added.]

In *Denzer v Rouse,* 48 Wis 2d 528, 534; 180

---

[4] This of course does not exclude an elevated standard of care when an attorney and client enter into a contract or agreement whereby the attorney agrees to be held to a higher standard. 73 Mich 337.

NW2d 521 (1970), the court noted that an attorney cannot possibly be required to predict infallibly how a court will rule. "A lawyer would need a crystal ball, along with his library, to be able to guarantee that no judge, anytime, anywhere, would disagree with his judgment or evaluation of a situation." Similarly, this Court refuses to impose any greater duty on attorneys than to act as would an attorney of ordinary learning, judgment, or skill under the same or similar circumstances.

Lastly, mere errors in judgment by a lawyer are generally not grounds for a malpractice action where the attorney acts in good faith and exercises reasonable care, skill, and diligence. *Baker v Beal,* 225 NW2d 106, 112 (Iowa, 1975). Where an attorney acts in good faith and in honest belief that his acts and omissions are well founded in law and are in the best interest of his client, he is not answerable for mere errors in judgment. *Rorrer v Cooke,* 313 NC 338, 340-342; 329 SE2d 355 (1985). See also 7 Am Jur 2d, Attorneys at Law, §§ 201-202, pp 250-252; 7A CJS, Attorney and Client, §§ 257-258, pp 464-472; 1 Mallen & Smith, Legal Malpractice (3d ed), §§ 14.12 to 14.17, pp 836-853:

> [T]here can be no liability for acts and omissions by an attorney in the conduct of litigation which are based on an honest exercise of professional judgment. This is a sound rule. Otherwise every losing litigant would be able to sue his attorney if he could find another attorney who was willing to second guess the decisions of the first attorney with the advantage of hindsight . . . . To hold that an attorney may not be held liable for the choice of trial tactics and the conduct of a case based on professional judgment is not to say, however, that an attorney may not be held liable for any of his actions in relation to a trial. He is still bound to exercise a reasonable degree of skill and care in all his professional undertakings. [*Wood-*

*ruff v Tomlin,* 616 F2d 924, 930 (CA 6, 1980). Citations omitted.]

IV

We find that the defendant acted as would an attorney of ordinary learning, judgment, or skill under the same or similar circumstances, and his alleged acts and omissions were a matter of trial tactics based on reasonable professional judgment.

From October 12 through October 15, 1987, Mr. Simko's trial was held in the Recorder's Court for the City of Detroit, before the Honorable Craig S. Strong. Mr. Simko was the only witness to testify. Dr. Karbal and Mrs. Simko were not called as witnesses because Mr. Blake did not feel that they would be beneficial to the defense's case. Following the prosecution's presentation of the case, and again after the defense rested, Mr. Blake moved for a directed verdict of acquittal. Both motions were denied by Judge Strong. On October 15, 1987, Mr. Simko was convicted by the jury as charged.

We find, as a matter of law, that the plaintiffs' allegations could not support a breach of duty because they are based on mere errors of professional judgment and not breaches of reasonable care. Plaintiffs' allegations of breach of duty are contained in ¶¶ 10(a)-(k) of plaintiffs' complaint. The only specific allegations that could have altered the outcome of Mr. Simko's trial are contained in ¶¶ 10(d)-(i).[5] Plaintiffs alleged that defendant should have called other witnesses besides

---

[5] Paragraphs 10(a)-(c) will not be discussed herein because they are general allegations and do not indicate how the outcome of the trial would have been affected. Also ¶¶ 10(j)-(k) are conclusory, and, again, do not specifically show how the trial would have been affected or how the defendant may have acted differently.

Mr. Simko, including Mr. Simko's physician, Dr. Michael Karbal, and Mr. Simko's wife, Margaret Simko. In addition, ¶ 10(i) alleges that Mr. Blake failed to ascertain the name and location of the hotel where Mr. Simko had allegedly spent the day before he was arrested.

First, it is a tactical decision whether to call particular witnesses, as long as the attorney acts with full knowledge of the law and in good faith. *Woodruff, supra* at 933. *Woodruff* held that a charge of malpractice on the basis of an attorney's decision to not cross-examine an expert witness did not constitute malpractice. Similarly, in *Frank v Bloom,* 634 F2d 1245, 1256-1257 (CA 10, 1980), the court stated that it will afford latitude to the attorney when making tactical strategies:

> [I]t is the duty of the attorney who is a professional to determine trial strategy. If the client had the last word on this, the client could be his or her own lawyer.

See also *Kirsch v Duryea,* 21 Cal 3d 303; 578 P2d 935 (1978), *Fishow v Simpson,* 55 Md App 312; 462 A2d 540 (1983), and *Burk v Burzynski,* 672 P2d 419 (Wy, 1983).

Here, plaintiffs are alleging that defendant was negligent in not calling Dr. Karbal and Mrs. Simko. This, however, is a tactical decision that this Court may not question. Perhaps defendant made an error of judgment in deciding not to call particular witnesses, and perhaps another attorney would have made a different decision; however, tactical decisions do not constitute grounds for a legal malpractice action. *Woodruff, supra.* Plaintiffs' claim that certain witnesses should have been called is nothing but an assertion that another lawyer might have conducted the trial differ-

ently, a matter of professional opinion that does not allege violation of the duty to perform as a reasonably competent criminal defense lawyer.

Second, the failure to ascertain the name and location of the hotel where a client was located at a particular time does not constitute negligence. There is no duty to infallibly protect a client from impeachment. This would be an impossible standard for defense counsel to meet and would violate and extend beyond the well-established reasonable care standard. See *Lipton, supra* at 594; *Babbitt, supra* at 337.

V

We conclude that there was no legal basis for holding that Mr. Blake's actions constituted negligence, or otherwise constitute malpractice. When an attorney fashions a trial strategy consistent with the governing principles of law and reasonable professional judgment, the attorney's conduct is legally adequate. Accordingly, we affirm the decision of the Court of Appeals and hold that the defendant fulfilled his duty to his client.

CAVANAGH, BOYLE, and RILEY, JJ., concurred with MALLETT, J.

LEVIN, J. (*dissenting*). This is an action for legal malpractice. Plaintiff Arthur Louis Simko was convicted of possessing over 650 grams of cocaine and sentenced to the mandatory term of life in prison.[1] Defendant Marvin Blake represented

---

[1] MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i).

He was also convicted of possession of a firearm in the commission or attempt to commit a felony. MCL 750.227b; MSA 28.424(2).

Simko at the trial. His motion for a directed verdict was denied.

The Court of Appeals[2] reversed Simko's conviction finding that there was insufficient evidence that Simko possessed the cocaine found in the vehicle in which he was a passenger. The Court thus implicitly ruled that Blake's motion in Simko's behalf for a directed verdict should have been granted.

Although Simko's conviction was reversed without a new trial, he was imprisoned under a life sentence for more than two years. Simko, his wife, Margaret A. Simko, and his daughter, Tara Marie Simko, commenced this action against Blake alleging errors of omission and commission and failure to observe the standard of care required of a lawyer.

The circuit judge granted Blake's motion for summary disposition, dismissing the complaint because he concluded that the "proximate cause" of Blake's conviction was the trial judge's error in denying Blake's motion for a directed verdict and the "unreasonable jury" verdict of guilty.

The Court of Appeals acknowledged that "[p]roximate cause in attorney malpractice is a question for the trier of fact," and *"accept[ed] that a trier of fact could find that it was because Blake did not present additional evidence that Simko spent two years in prison unnecessarily."*[3] The Court nevertheless affirmed, one judge dissenting, on the basis that Blake had discharged his "duty" to Simko when he "identified correctly the legal inadequacy" of the people's case and thus had no duty to "be prepared to present additional evidence in

---

[2] Unpublished opinion per curiam, issued November 29, 1989 (Docket No. 105873).

[3] 201 Mich App 191, 193; 506 NW2d 258 (1993).

support of alternative theories just in case the trial court erroneously should deny the motions."[4]

The majority, adopting essentially the same analysis, affirms. I would reverse the Court of Appeals and reinstate the complaint because, although stated in terms of "duty," the majority in this Court

- essentially ignores that Blake's motion asserted that the requisite causal link[5] was absent, and did not seek a redefinition of the duty owing by, or the standard of care required of, a lawyer;
- in effect redefines the standard of care to require of a lawyer less than ordinary learning, judgment, diligence, and skill in the representation of a client;
- in effect invades the province of the trier of fact by finding that "the" only cause/proximate cause of Simko's injury was the trial judge's error in denying the motion for directed verdict rather than allowing the trier of fact to determine whether "a" cause was error by Blake;
- indulges in further fact finding in stating that Blake's "alleged acts and omissions were trial tactics based on good faith and reasonable professional judgment."[6]

A physician who operated successfully on a patient, whose malady could have been cured with a pill that a physician of ordinary learning, judg-

---

[4] *Id.,* p 194.

[5] Blake moved for summary disposition on the basis that the Simkos "failed to state a claim on which relief can be granted" MCR 2.116(C)(8) because "the proximate cause of [Blake's] convictions was the trial court's error in denying the Motion for a Directed Verdict of not guilty."

[6] *Ante,* p 650.

ment, diligence or skill would have administered, would be subject to liability for the unnecessary inconvenience, pain, and suffering, even if endured for only a few weeks, and not two years. So, too, should a lawyer be subject to liability if the trier of fact finds that a lawyer of ordinary learning, judgment, diligence, and skill would have advanced alternative theories that would have avoided Simko enduring over two years' imprisonment.

The Supreme Court of North Dakota ruled in a legal malpractice action, *Klem v Greenwood,* 450 NW2d 738, 744 (ND, 1990), that "merely because this court reversed Klem's conviction does not mean that any alleged malpractice caused no damage." The court said that in holding that the trial court had erred and that Greenwood, Klem's lawyer, had preserved the issue for appellate review, the court "did not hold, as a matter of law, that Greenwood had met the degree of skill, care, *diligence,* and knowledge commonly possessed and exercised by a reasonable, careful, and prudent attorney." (Emphasis added.)[7]

I

The majority states:

> [A]ttorneys must only act as would an attorney of ordinary learning, judgment, or skill under the same or similar circumstances.[8]

A

I agree that a lawyer need "only act" as would a

---

[7] The court observed that Klem had alleged "acts of malpractice, including, but not limited to, the failure to adequately cross-examine a complaining witness."

[8] *Ante,* p 650.

lawyer of ordinary learning, judgment, diligence, or skill under the same or similar circumstances. But he must *so act.* If the majority were to allow this case to come to trial, the evidence were to show, and a trier of fact were to find, that a lawyer of ordinary learning, judgment, diligence, or skill, under the same or similar circumstances, would have avoided errors that Blake allegedly committed, then Blake is, or should be, subject to liability for damage found to have resulted from conviction of an offense subjecting Simko to a sentence of life in prison and actual incarceration for over two years.

In holding as a matter of law that Blake is not subject to liability because it was ultimately determined that he interposed a legally adequate defense even though, had he avoided error, Simko would not have been convicted and served over two years in prison, the majority requires less of Blake than the conduct of a lawyer of "ordinary learning, judgment, or skill under the same or similar circumstances."

B

The majority also states that "mere errors in judgment by a lawyer are *generally* not grounds for a malpractice action where the attorney acts in good faith and exercises reasonable care, skill, and diligence."[9] (Emphasis added.) It is implicit in the formulation adopted by the majority, requiring a lawyer to act as would a lawyer of "ordinary learning, *judgment,* or skill,"[10] that errors of judgment may constitute negligence. Whether an error of judgment, or a "mere" error of judgment, consti-

[9] *Ante,* p 658.

[10] *Ante,* p 650, quoted in text accompanying n 8.

tutes negligence depends on whether a lawyer of ordinary learning, judgment, diligence, or skill would have avoided the error or "mere" error of judgment. That "generally" is a question of fact for the trier of fact to decide.

## II

Manifestly, no trial lawyer would long remain solvent if he were required to protect against judicial error or "unreasonable" jury verdicts. It is the experience of most lawyers that they win cases they expect to lose, and lose cases they expect to win.

It is because lawyers cannot safely predict that a trial judge will avoid error or that an appellate court will both recognize and correct an error, that a lawyer of ordinary learning, judgment, diligence, and skill does not—and it is, and should be, legal malpractice to—bet his client's life on prevailing on one issue that he believes is "legally sufficient to fully vindicate"[11] his client's position, eschewing other viable means of defense.

In *Dedes v Asch,* 446 Mich 99; 521 NW2d 488 (1994), and *People v Tims,* 449 Mich 83; 534 NW2d 675 (1993), this Court ruled that to be actionable, negligent misconduct need be only "a" cause and need not be "the" cause of the injury. Today the majority announces a special rule for lawyer negligent misconduct, relieving lawyers of liability for failure to advance alternative theories or defenses that should have been advanced to observe the standard of care if it is ultimately determined that, but for judicial or jury error, plaintiffs' loss would have been avoided.

[11] *Ante,* p 650.

III

Blake's motion for summary disposition was filed on the basis that the Simkos "failed to state a claim on which relief can be granted."[12] In finding facts on this second appellate review, the majority ignores that only the pleadings may be considered by the circuit court and the appellate courts in ruling on such a motion.

The majority finds, as a matter of fact or law, that the "alleged acts and omissions were trial tactics based on good faith and reasonable professional judgment."[13] The complaint particularized concerning the errors claimed by Simko.[14] In response to the motion for summary disposition, the Simkos filed an affidavit of a lawyer stating that in his opinion Blake had erred. Blake did not file an affidavit in support of the motion for summary disposition, probably because no such support is required or permitted.[15] Nevertheless the majority finds, as a matter of fact or law, that Blake acted in good faith and exercised reasonable professional judgment.

The majority finds, as a matter of fact or law, that certain witnesses were not called because Blake "did not feel that they would be beneficial to the defense's case."[16]

Because Blake did not file an affidavit in support of his motion for summary disposition, and, even if he had, it could not properly have been considered in deciding the motion, there is no record support for fact finding by the majority.

Because there is no factual record, the majority

---

[12] MCR 2.116(C)(8).

[13] *Ante,* p 650.

[14] The particularized claims are summarized in the majority opinion, p 652, n 2.

[15] MCR 2.116(G)(5).

[16] *Ante,* p 659.

does not have a basis for asserting that the witnesses were not called because Blake "did not feel that they would be beneficial to defense's case."[17] Since there is no record, we do not know whether either or both witnesses were interviewed by Blake, and what might have occurred during any such interview. The silent record no more justifies a finding that Blake had a reason for not calling the witnesses, than it would a finding that he simply neglected or overlooked calling them. A silent record supports no finding of fact at all.

IV

The majority states, quoting with approval the opinion of the Court of Appeals:

> "To impose a duty on attorneys to do more than that which is legally adequate to fully vindicate a client's rights would require our legal system, already overburdened, to digest unnecessarily inordinate quantities of additional motions and evidence that, in most cases, will prove to be superfluous."[18]

If lawyers were omniscient about trial and appellate court rulings that will be forthcoming in a particular case, they would know what motions were unnecessary. If trial judges were omniscient about appellate court rulings, they would rarely err. It is because a lawyer cannot assuredly predict such rulings that an ordinarily careful, prudent, diligent, and skillful lawyer burdens the legal system with motions that, in retrospect, may have been unnecessary.

The Simkos are not complaining that Blake

---

[17] *Id.*

[18] *Id.*, p 657, quoting *Simko v Blake, supra,* p 194.

failed to paper this case as commonly occurs in high-stakes civil litigation. Indeed, they do not claim that Blake failed to file a motion, "additional" or otherwise. They complain, rather, about his asserted lack of diligence in preparing for trial, and in failing to call witnesses during trial.[19]

Lowering the standard of care for lawyers will not reduce the burden of over-lawyering by lawyers who fail to recognize their professional responsibility. Lowering the standards will not raise the level of professional responsibility.

v

In *Gebhardt v O'Rourke,* 444 Mich 535, 554; 510 NW2d 900 (1994), this Court said that "successful postconviction relief is not a prerequisite to the maintenance of a claim for legal malpractice arising out of negligent representation in a criminal matter." The Court, thus, implicitly said that a legal malpractice action may be maintained against a lawyer who represented a plaintiff in a criminal matter without establishing that he rendered "ineffective assistance."[20]

Simko is at least entitled to maintain this damage action for legal malpractice if he can establish that Blake failed to render effective assistance within the meaning of the "ineffective assistance" standard.[21] The majority should at least remand to

---

[19] *Ante,* p 652, n 2.

[20] See *People v Pickens,* 446 Mich 298; 521 NW2d 797 (1994).

[21] Simko sought reversal in the Court of Appeals not only on the basis of insufficiency of the evidence but also on the basis that he was denied the effective assistance of counsel. Because the Court of Appeals reversed his conviction on the basis that there was insufficient evidence, it did not reach the question whether he was denied the effective assistance of counsel. Simko thus did not obtain a ruling from the Court of Appeals on his claim that he was denied the effective assistance of counsel.

the circuit court for determination of the effective assistance issue.[22]

We would reverse the Court of Appeals and remand for determination under the standard of care heretofore applicable in actions asserting legal malpractice in the conduct of criminal as well as civil cases.

BRICKLEY, C.J., concurred with LEVIN, J.

WEAVER, J., took no part in the decision of this case.

---

[22] In *Gebhardt, supra* at 548, n 13, this Court said:

We do not accept the "no relief-no harm" rule because it is a legal fiction with serious analytical flaws.[13]

---

[13] Rather than being a legal definition of harm, the rule is a legal fiction that divorces the law from reality. "[P]ersons convicted of a crime will be astonished to learn that, even if their lawyers' negligence resulted in their being wrongly convicted and imprisoned, they were not harmed when they were wrongly convicted and imprisoned but, rather, that they are harmed only if and when they are exonerated."

---

The Court also said at 552:

However, as the Court in *Luick* [*v Rademacher,* 129 Mich App 803; 342 NW2d 617 (1983)] at 807, n 1, noted, *Parisi* [*v Michigan Twps Ass'n,* 123 Mich App 512; 332 NW2d 587 (1983)] "does not provide an answer to the question now before us. . . . In this case, a cause of action for malpractice could well exist regardless of the outcome of post-judgment proceedings in the underlying case."