Markman, J.
I respectfully concur in part and dissent in part. I fully concur with the majority’s legal determination that the trial court improperly modified SJI2d 30.01 by substituting “hospital neonatal intensive care unit” for the specific profession or specialties at issue. However, I dissent from the majority’s conclusion that this error requires reversal. Instead, I believe that the instruction, albeit flawed, adequately and fairly communicated the parties’ theories of liabil *23 ity so that failure to reverse would not be inconsistent with substantial justice.
I also fully concur with the majority’s legal determination that MCL 600.2912a does not apply to nurses. Instead, as the majority correctly observes, nurses are held to the common-law standard of care, i.e., the skill and care ordinarily possessed and exercised by practitioners of the same profession in the same or similar localities. However, as with the instructional error issue, I do not believe that this error requires reversal. Instead, because, under the facts of this case, the common-law standard of care and. the “national” standard of care were the same, failure to reverse would not be inconsistent with substantial justice.
Although, under different circumstances, these instructional errors might have been sufficient to warrant reversal, under the particular circumstances of this case, I do not believe that they can be so viewed.
I. JURY INSTRUCTION
A. STANDARD OF REVIEW
This case concerns the trial court’s deviation from the standard instruction language set forth in SJI2d 30.01. This Court reviews claims involving instructional errors by a de novo standard. Case v Consumers Power Co, 463 Mich 1, 6; 615 NW2d 17 (2000).
In doing so, we examine the jury instructions as a whole to determine whether there is error requiring reversal. The instructions should include all the elements of the plaintiffs claims and should not omit material issues, defenses, or theories if the evidence supports them. Instructions must not be extracted piecemeal to establish error. Even if some *24 what imperfect, instructions do not create error requiring reversal if, on balance, the theories of the parties and the applicable law are adequately and fairly presented to the jury. . . . We will only reverse for instructional error where failure to do so would be inconsistent with substantial justice. [Id. (citation omitted); see also MCR 2.613(A).]
B. DISCUSSION
The standard jury instruction at issue reads as follows:
When I use the words “professional negligence” or “malpractice” with respect to the Defendant’s conduct, I mean the failure to do something which a__(name profession) of ordinary learning, judgment or skill in [this community or a similar/_ (name particular specialty)] would do, or the doing of something which a _ (name profession) of ordinary learning, judgment or skill would not do, under the same or similar circumstances you find to exist in this case. [SJI2d 30.01.]
At trial, the court modified this standard instruction, and instead read the following instruction to the jury:
When I use the words professional negligence or malpractice with respect to the Defendant’s conduct, I mean the failure to do something which a hospital neonatal intensive care unit would do or the doing of something which a hospital neonatal intensive care unit would not do under the same or similar circumstances you find to exist in this case.
It is for you to decide, based upon the evidence, what the hospital neonatal intensive care unit with the learning, judgment or skill of its people would do or would not do under the same or similar circumstances.
Comparing the standard instruction with the modified instruction, it is clear that the trial court: (1) substi *25 tuted, in the first paragraph, “a hospital neonatal intensive care unit” in place of a “name[d] profession”; (2) omitted, in the first paragraph, the phrase “ordinary learning, judgment or skill”; and (3) omitted, in the second paragraph, the word “ordinary” appearing before and modifying the clause “learning, judgment or skill.”[1] Defendant maintains that these modifications amounted to a “gross deviation” from the standard instruction, thus depriving defendant of a fair trial.
Upon review of the first modification, i.e., the “unit” instruction, the majority finds that it was error requiring reversal for the trial court to insert “unit” in place of the specific profession or speciality at issue.[2] In support of its conclusion, the majority emphasizes that plaintiffs focused upon several members of the unit including a neonatologist, a respiratory therapist, a resident, and Nurse Plamondon — individuals who were subject to differing standards of care.[3] Because of these differing standards:
The “unit” instruction failed to ensure that the jury clearly understood 1) which agents were involved, and 2) *26 that it could find professional negligence or malpractice only on the basis of the particular standard of care applicable to each employee’s profession or specialty [Ante at 14-15.]
Thus, the majority finds that the jury was undermined in its task of determining whether any of defendant’s agents individually fell below the appropriate standard of care and that, under these circumstances, substantial justice requires reversal. Id. 15. I respectfully disagree. Although I am certainly not oblivious to the potential that the modified instruction had for confusing the jury, upon review of the whole record, I simply do not believe that this is what occurred here. I do not believe that such potential for confusion reflects the reality of what transpired at this trial. Rather, I believe that the jury clearly understood that the allegations of negligence were principally focused upon Nurse Plamondon, and that they understood Nurse Plamondon’s specific standard of care.
In reviewing the particular instruction at issue, it must be emphasized that this instruction further clarified the “unit” reference by focusing on the “learning, judgment or skill of its people.” When the trial court directed that the jury must examine the “learning, judgment or skill” of individual representatives of the defendant, the jury, based upon the presentation of this case, almost certainly focused on the alleged negligence of a single person, Nurse Plamondon.
First, during opening arguments, plaintiff specifically and almost exclusively focused upon Nurse Plamondon’s alleged negligence in: (1) allowing the umbilical arterial catheter (uac) to become dislodged *27 from infant Brandon Cox,[4] (2) failing to summon, in a timely manner, the assistance of an attending physician, and (3) medicating the infant without proper authorization from a physician.
On the 10th at approximately four o’clock, a nurse, Nurse Plamondon, Martha Plamondon, attended to Brandon at four o’clock and she made a nursing note. She drew fluid out of this umbilical arterial catheter . . . and did other things to attend to the baby, and then she left.
At 4:20 Brandon was found with the umbilical arterial catheter dislodged and he had lost. . . fifty-five to sixty percent of [his] blood. And Plamondon noticed this at 4:20. It happened some time between 4:00 and 4:20 that the catheter came out. And that is just simply not supposed to happen under ordinary circumstances .... That only happens when somebody was inattentive.
So Plamondon arrives and does she call a physician right away, does a physician respond right away? No. She arrives at 4:20. It’s noted that this has happened to Brandon and nothing is done for him other than maybe some first aid to the umbilicus for fifteen minutes. . . .
Finally, he’s given Plasm[a]nate, which is a fluid replacement. It’ll bring blood pressure up, but it doesn’t really contribute to oxygenation.
Consistently with opening arguments, plaintiffs’ substantive evidence primarily focused on the alleged negligence of Nurse Plamondon. Dr. Houchang Modanlou, an expert witness for plaintiff, testified *28 that, upon review of Brandon’s chart, he had discovered essentially three “criticisms” concerning the care that Brandon received at defendant’s facility. Dr. Modanlou criticized Nurse Plamondon’s maintenance of the uac, Nurse Plamondon’s delay in responding to the dislodgment of the uac, and Nurse Plamondon’s decisions concerning appropriate emergency care. Dr. Modanlou’s testimony essentially excluded any other potential tortfeasors. In particular, he stated that “from birth to the accident I did not have major criticism,” and affirmed that there was “no [significant] criticism of any of the care rendered to Brandon Cox until the 4:00 to 4:20 P.M. time period on February the 10th.”
Dr. Carolyn S. Crawford, another expert witness for plaintiffs, also focused her testimony almost exclusively on Nurse Plamondon. In part, she affirmed that “it [was] incumbent upon the reasonably prudent nurse after repositioning a baby to ascertain for certain that that catheter’s in place and that the securing devices are still secure.” With regard to the response pursuant to discovering the dislodged catheter, Dr. Crawford stated there was a breach in the standard of care “in not notifying the resident immediately, and in not calling for help . . . [i]t appeared that the nurse tried to handle the situation on her own for about fifteen minutes before she called for a doctor.”
Plaintiff also labored to submit evidence discrediting Nurse Plamondon’s version of the events surrounding the dislodged catheter. With regard to the administration of medication, Dr. Roberto Villegas, Jr., testified that, had he given Nurse Plamondon a medical order to administer Plasmanate, such an order would have been entered into Brandon’s medical *29 record either by himself or the nurse. Further, he testified that he would not have ordered a full 20cc of Plasmanate to be administered to Brandon, but instead would have ordered two separate lOcc dosages. Clearly, Dr. Villegas was called to testify solely for the purpose of proving that Nurse Plamondon had not received any medical orders for the administration of Plasmanate from Dr. Villegas, but instead administered it without proper authorization. Similarly, Richard Scott, a respiratory therapist, was called by plaintiffs to discredit Nurse Plamondon’s assertion that she immediately called for a physician or resident upon discovering the dislodged UAC, as well as to emphasize that Brandon was inactive and, therefore, would have been unable to dislodge the uac connection as defendant speculated.
Indeed, defendant also made clear that the crux of this case focused upon Nurse Plamondon. At opening argument, defendant stated that “their expert is pointing to a nurse, Nurse Martha Plamondon, who happened to be on that shift when this was discovered.” Defendant’s subsequent proofs, not surprisingly as a result, sought principally to refute any negligence on the part of Nurse Plamondon.[5] Further, on appeal to this Court, defendant in its brief recognized that the alleged negligent conduct was focused upon Nurse Plamondon — “[a]t the outset it must be clearly understood that plaintiffs’ experts’ testimony was restricted to criticisms of the hospital’s nurses, particularly Nurse Plamondon . ...” On these bases, it seems reasonably clear, in my judgment, that virtually the *30 entire thrust of this case focused on the negligence, or lack thereof, of one particular individual, Nurse Plamondon.
Obviously, this conclusion is at odds with the majority’s, and Justice Kelly’s, positions that this case essentially involved the negligence of several agents. While plaintiff, during closing argument, may have expressed concerns about individuals other than Nurse Plamondon, namely, Respiratory Therapist Richard Scott and Nurse Edith Krupp, reviewing the record in its entirety indicates to me that any potential negligent conduct on the part of these actors was an incidental inquiry here. Indeed, the primary purpose of even eliciting testimony from these individuals was essentially to support or negate the theories of negligence concerning Nurse Plamondon. For example, Scott’s testimony focused on his observations concerning movements on the part of Brandon before the dislodgment of the uac, as well as Nurse Plamondon’s conduct after discovering the dislodged UAC. Plaintiffs primarily elicited this testimony in an effort to dispel defendant’s theory that Brandon pulled the UAC out with his hands or feet as well as discredit Nurse Plamondon’s testimony that she had immediately called out to Dr. Villegas upon discovering the dislodged UAC. Further, the substance of Ms. Krupp’s testimony essentially focused on Brandon’s medical condition before the dislodgment of the UAC. Thus, this testimony essentially was relevant to negating or supporting the causation element. Nurse Krupp also testified about an adjustment that she had made to the UAC the day before the incident involving Nurse Plamondon. However, because of its fleeting appearance in the record, I do not believe that it materially *31 altered the posture of this case, i.e., that the focus was on Nurse Plamondon.[6]
Because the record indicates that the gravamen of this dispute related to Nurse Plamondon, as opposed to other potential tortfeasors, I believe that the jury, when told to consider the “learning, judgment or skill” of defendant’s representatives, principally focused on whether, one person, Nurse Plamondon, committed malpractice when she (1) “allowed” the uac to come out of Brandon’s umbilicus, (2) delayed in summoning the assistance of a physician, and (3) performed medical procedures without appropriate authorization. Thus, I believe that the instruction “adequately” and “fairly” communicated the theories of this case as presented by the parties to the jury, and that failure to reverse would not be inconsistent with substantial justice.
With regard to the second and third modifications of the standard instruction — the court’s deletion of the phrase “of ordinary learning, judgement or skill” in the first paragraph and its deletion of the word “ordinary” before the qualifying phrase in the second paragraph, these modifications also, I believe, constituted instructional error.
SJI2d 30.01 provides that an alleged tortfeasor must fail to do something that is normally required by such an individual “of ordinary learning, judgment or skill,” or else must do something which an individual “of ordinary learning, judgment or skill” would not do under the same or similar circumstances. As Judge Griffin in dissent asserted, these phrases are con *32 tained within the standard jury instruction because this “ordinary” care standard constitutes a limitation upon a defendant’s duty. For example, in the context of legal malpractice, this Court has stated:
[According to SJI2d 30.01, all attorneys have a duty to behave as would an attorney “of ordinary learning, judgment, or skill . . . under the same or similar circumstances
[A]n attorney does not have a duty to insure or guarantee the most favorable outcome possible. An attorney is never bound to exercise extraordinary diligence, or act beyond the knowledge, skill, and ability ordinarily possessed by members of the legal profession. [Simko v Blake, 448 Mich 648, 656; 532 NW2d 842 (1995).]
As indicated in Simko, the limitation on one’s standard of care is significant because it alerts the jury to the fact that a professional defendant need not conform his conduct to what is at a level above that of other members of his profession. Instead, he needs only to conduct himself in way that is consistent with others in his profession. For this reason, the trial court indeed erred when it deleted the phrase “of ordinary learning, judgement or skill” in the first paragraph of the instructions as well as when it deleted the word “ordinary” before the qualifying phrase in the second paragraph. However, as with the first instructional error, I am of the opinion that these errors were harmless, under the particular circumstances of this case.
In reviewing the second modification, it is important to emphasize that a substantial portion of this clause did appear in the second paragraph. In part, the second paragraph of the instruction stated that the jury must decide what a neonatal unit, “with the *33 learning, judgment or skill of its people would do under the same or similar circumstances.” Although this qualifying phrase was not stated twice within the instruction, as it should have been, the essential concept that a comparison must be had with others who are comparably situated was reasonably communicated to the jury.
Further, a review of the record shows that both parties, in presenting their theories of the case, clearly communicated that Nurse Plamondon need not conduct herself in a way that exceeded the standards of other members of her profession. Instead, the parties exclusively focused on the conduct normally, or ordinarily, exhibited by other reasonably prudent nurses. Thus, the jury well understood that Nurse Plamondon’s conduct need only be within the range of conduct exhibited by other members of her profession.
In sum, while the instruction in this case was clearly in error, I am not convinced that the correct instruction, one devoid of these errors, would have resulted in any different verdict. Thus, in my view, failure to reverse would not be inconsistent with substantial justice.
n. STANDARD OF CARE
Finally, while I agree with the majority’s legal conclusion that nurses are held to the common-law standard of care, i.e., the skill and care ordinarily possessed and exercised by practitioners of the same profession in the same or similar localities, I believe that the trial court’s decision to permit testimony asserting a “national” standard of care was harmless *34 under the circumstances of this case. An error in a trial court’s ruling is “not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.” MCR 2.613(A).
A review of the testimony shows that Nurse Plamondon had the duty to: (1) maintain and monitor the UAC, (2) summon a physician or resident in a timely fashion upon discovering the dislodgment of the UAC, and (3) provide medicinal treatment only under the direction of a physician or resident. These duties were apparently the same under either a “national” standard of care or a “common-law” standard of care. Further, and equally importantly, the applicable standards of care in this case were simply not in dispute here. Instead, the parties only disputed whether Nurse Plamondon had breached the aforementioned duties and whether any resulting negligence was the cause of Brandon’s injuries. Thus, because the duties of this nurse were apparently the same under either standard of care, and because the standards of care were not in dispute at trial, I believe that failure to grant a new trial or set aside the verdict would not be inconsistent with substantial justice.
CONCLUSION
In conclusion, I believe that the trial court erred in its instructions to the jury. Specifically, I agree with the majority that the trial court improperly substituted the “unit” for the specific profession or specialities at issue. In addition, I believe that the trial court improperly deleted “ordinary learning, judgment or *35 skill” from the first paragraph of SJI2d 30.01, and improperly deleted “ordinary,” from its second paragraph. In a different circumstance, it is quite easy to imagine that such errors would require reversal. Indeed, it is not inconceivable that such instructions might have confused the jury in this case. However, upon review of the whole record, I am convinced that the instructions “adequately” and “fairly” communicated the parties’ theories so that failure to reverse would not be inconsistent with substantial justice. The reality of this case is that the jury was presented with the alleged negligence of one person, Nurse Plamondon, and nothing in the jury instructions could reasonably have shifted this focus for the jury.
For these reasons, I would affirm the Court of Appeals decision.

 The dissenting justice states that “[c]onsideration of the [third omission] is inappropriate because defendant forfeited it.” Post at 40, n 6. I respectfully disagree. Defendant, in its application for leave to appeal, asserted that the trial court’s “gross deviation from SJI2d 30.01 . . . deprived defendant of a fair trial.” This “gross deviation” included, among other things, the omission of the word “ordinary” from the standard jury instruction. In my view, analysis of this omission is a necessary part of an overall determination whether defendant here was truly deprived of a fair trial.

 Because the majority determined that the first modification amounted to error requiring reversal, it did not address the remaining two standard jury instruction modifications.

 Specifically, the majority states, correctly in my judgment, that “[t]he respiratory therapist, for example, may not be held to the standard of care of the neonatologist.” Ante at 14.

 As explained in the majority opinion, Brandon Cox was bom on February 8, 1990 at 26 or 27 weeks gestation, weighing approximately 900 grams, and was admitted into defendant’s neonatal intensive care unit (Nicu).

 Defendant also sought to negate the causation element as part of its case in chief.

 Nor, of course, would Nurse Krupp be subject to any different standard of care for purposes of jury consideration than Nurse Plamondon.