715 A.2d 1121

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Jerard BRADLEY, Appellant.**

Supreme Court of Pennsylvania.

Argued April 27, 1998.

Decided Aug. 7, 1998.

Reargument Denied Sept. 30, 1998.

---

Marc F. Lovecchio, Angela C. Lovecchio, Williamsport, for Jerald Bradley.

Thomas A. Marino, Williamsport, for Com.

Robert A. Graci, Harrisburg, for Office of Atty. Gen.

Kenneth A. Osokow, Philadelphia, for Appellee.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## MAJORITY OPINION OF THE COURT

FLAHERTY, Chief Justice.

Appellant, Jerard Bradley, was convicted by a jury in Lycoming County, Pennsylvania of first degree murder in the death of Angela Bridge. On October 18, 1991, he was sentenced to death. Post verdict motions were timely filed and denied. This direct appeal followed.

Although appellant raises twenty-seven issues in this direct appeal, because of our disposition of the case, we address only one issue, viz. that counsel was ineffective in filing a motion to withdraw appellant's guilty plea to third degree murder.

The facts underlying this claim are that on February 26, 1990 appellant was arrested while incarcerated on other charges and charged with burglary, two counts of robbery and criminal homicide in the death of Angela Bridge. On March 7, 1991 he entered a guilty plea to murder in the third degree in the Bridge killing. The court accepted the plea and ordered a presentence investigation and a sixty day evaluation. During this sixty day period, appellant wrote several letters to the court and to the victim's family admitting that he killed Ms. Bridge in the course of an argument and after she attacked him.

On or about May 14, 1991 appellant discussed with a paralegal who was employed by his attorneys the possibility of withdrawing his guilty plea. The paralegal obtained appellant's request in writing that his plea be withdrawn and forwarded this request to his two attorneys, Mr. Miele and Mr. Protasio. Neither Mr. Miele nor Mr. Protasio went to see appellant to discuss his request, but instead simply filed a motion to withdraw the guilty plea. The Commonwealth filed a written concurrence, and the court, without a hearing, granted the motion to withdraw the guilty plea. At appellant's subsequent trial, as stated above, he was found guilty of murder of the first degree and associated crimes and was sentenced to death.

The issue in this appeal is whether counsel were ineffective in failing to meet with appellant and advise him with respect to his desire to withdraw his plea.

■ It is well established that an attorney representing a defendant in a criminal case has the duty to advise his client on important decisions. *Commonwealth v. Weiss*, 530 Pa. 1, 606 A.2d 439, 443 (1992). Plainly, the decision to withdraw a guilty plea is an important decision.

At post verdict evidentiary hearings Attorney Miele explained his decision not to discuss the plea withdrawal with appellant as follows:

Our relationship with Mr. Bradley at that point had spanned well over a year, and to say it was a difficult relationship, I believe, would be an understatement. He had kind of a love-hate relationship with us in the sense he needed us, but he didn't like us. He was constantly playing games with us. Mr. Bradley thought he was too smart for his own good. We felt that if we went up and talked to him that we were in a lost situation. By that I mean if we went up and convinced him not to withdraw his plea he would later claim our ineffectiveness, and if we went up there—and if we didn't go up to talk to him, he would then claim our ineffectiveness.

What we anticipated in filing every motion was that the motion would be filed, and it would be heard in front of the court. Mr. Protasio and I would both express on the record that this was against our instructions, that the judge probably would tell us to meet with our client and discuss it while were here, at which point we hopefully would be able to convince him not to do it. Naturally, that did not occur.

N.T. 6-25-95, pp. 64-65. Attorney Protasio explained his reaction to appellant's request to withdraw his guilty plea as follows:

The tone of the conversation [with the paralegal] I remember, was that my first instinct was we should go over and talk to him. You know, because to be honest, I felt this was a mistake for him to withdraw the plea, that it was some-

thing where we needed to discuss it with him before filing the motion. In discussing it with her [the paralegal] apparently that discussion already had taken place between herself and Bill Miele, and Bill felt that we were between a rock and a hard place. At this point, [if] we went over and talked to him and said, don't withdraw, that he might come back later and say we talked him out of filing that motion, whereas if we went ahead and filed it, we'd have felt it was a mistake. We felt we were between a rock and a hard place, and I could understand why Bill was reluctant to go over and talk to him. I then became reluctant to talk to him.

N.T. 6–25–95, p. 87.

The court questioned Attorney Protasio as follows:

Q. I should have asked Mr. Miele this. You were using that hearing as a method for the Court to help you control your client. Is that what you're saying?

A. No, you Honor. I think we were faced with what we felt was a real problem in ... in that if we went over and convinced [the appellant] not to file the motion to withdraw, that he could come back later and say that we coerced him into changing his mind, even though we felt that was in his best interest to do that, and ethically we shouldn't really do that because it was something that we as attorneys shouldn't be doing is convincing our client to change his mind, even though we really believed that it was in his best interest to do so. We felt that we had to file the motion. We couldn't just ignore that, so we filed the motion, and felt that at the hearing it perhaps would be explained to him or it would become evident to him that it was in his best interests and also would give us an opportunity to perhaps at least, you know, put on the record for ourselves with the court that we were opposed to that, and we were not recommending that he in fact do that because that was our position. We felt it was a mistake at that point in time. At that point in time I don't know whether [the appellant] knew all the ramifications, whether he knew that it was going to handicap us as far as what defense we could use,

and we felt a lot of that might be cleared up when we got to the point of a hearing.

N.T. 6–25–95, pp. 92–93.

It appears that there had developed an adverse relationship between the appellant and his attorneys and that the attorneys believed the appellant was irrational and likely to claim their ineffectiveness, no matter what they did. Their way of dealing with this, as the court perceptively indicated, was to attempt to use the court to do what they thought they could not do: viz., coerce their client into maintaining his plea bargain.

Attorney Miele was asked whether, following the granting of the motion to withdraw, he spoke to appellant concerning the case. He answered that "I imagine we did.... I would anticipate we'd discussed that with him." N.T. 6–25–95, p. 77.

In order to establish ineffectiveness of counsel, appellant must show (a) that his assertion is one of arguable merit; (b) that the attorney had no reasonable basis for his action or inaction; (c) that the attorney's action or inaction was prejudicial to the client. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975 (1987).

Appellant's claim that it was ineffective for counsel not to have discussed the withdrawal of his plea bargain before they filed motions to withdraw the plea is of arguable merit; counsel's justification for this decision—that they expected the court to hold a hearing at which they would state their position—is no justification at all; and it is plain that appellant was prejudiced by their inaction.

The withdrawal of a guilty plea to third degree murder in a case which might involve the death penalty is a momentous event. To say that the advice of counsel should be available before a criminal defendant undertakes the withdrawal of his plea is an understatement, especially in a case in which counsel has stated that he was uncertain whether Bradley knew all of the ramifications of his decision to withdraw the plea. Counsels' duty was to discuss the decision to withdraw

the plea, to explain its risks and ramifications, and to give their advice as to what he should do. If the client chose to ignore their advice to maintain the plea following this discussion, then the attorneys had done all they could do and they would have discharged their duty. That the client would later claim their ineffectiveness after he was sentenced to death is hardly justification for the failure of counsel to discuss the ramifications with the client before he withdrew his plea. That irresponsible, frustrated, and vindictive clients, clutching at straws, may later assert counsel's ineffectiveness can hardly be used as a justification to in fact become ineffective. Suffering such claims is merely part of the business of criminal defense.

The judgment of sentence of death is vacated. The motion to withdraw the plea bargain is denied. The case is remanded to the Court of Common Pleas for imposition of sentence on the plea bargain.

CAPPY, J., concurs in the result.

CASTILLE, J., dissents.