# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ALAIN FRASER KLINGBAIL,

Defendant-Appellant.

UNPUBLISHED
July 25, 2017

No. 332903
Grand Traverse Circuit Court
LC No. 15-012263-fh

Before: SAWYER, P.J., and MURRAY and GLEICHER, JJ.

GLEICHER (*dissenting*).

The majority dispenses with defendant's challenge to the incorrect advice given by defense counsel by positing that defendant withdrew his guilty plea for unrelated reasons. Counsel's unwise, erroneous, and ineffective advice was *the* guiding force behind defendant's decision. But for the constitutionally deficient advice of defendant's trial counsel, defendant would have been convicted by plea of a lesser charge and would have received a far more lenient sentence. I respectfully dissent.

## I. FACTS

A detailed recitation of the lower court record explains why defendant's conviction must be vacated. Around midnight on the night of October 13-14, 2015, defendant broke into the home of 89-year-old Margaret Gregory. Defendant was so intoxicated that he could not remember what happened inside the house. He had recently moved in with a friend in the neighborhood and thought he was entering his new residence. Noises in the background of Gregory's recorded call to 911 reveal that defendant pounded on the front door for several minutes. He also "yell[ed] and scream[ed]." The responding officer arrived quickly and according to his police report, observed defendant "knocking on the door loudly." Defendant began "kicking at the door and then using his shoulder in [an] attempt to gain access into the residence." When the officer saw defendant push through the door, he ran to intercept him. The officer entered the house seconds after defendant and saw defendant "standing over" Gregory "getting ready to assault her" with "[h]is hands . . . near [Gregory's] head."

The officer ordered defendant to get on the ground, but defendant did not comply. Instead, defendant "turned around and looked at [the] officer . . . with a blank stare." According to the officer, defendant "then clenched his fists" and started walking toward him. The officer deployed his Taser. Defendant fell to the ground but tried to stand back up, leading the officer to

-1-

use his Taser a second time. Following defendant's arrest, the officer questioned Gregory who was "obvious[ly] . . . shaken up."

The prosecutor charged defendant with assaulting, resisting, or obstructing a police officer, MCL 750.81(d)(1), and first-degree home invasion, MCL 750.110a(2).[1] The prosecutor also notified defendant that his sentence would be enhanced as a third-habitual offender. In relation to the home invasion charge, the felony complaint explained that defendant "did break and enter, or did enter without permission[,] a dwelling located at [xxx] E. State Street, *with the intent to commit an assault therein*, and while entering, present in, or exiting the dwelling Margaret Gregory[] was lawfully present therein. . . ." (Emphasis added.)

On November 6, 2015 (23 days after the offense), defendant appeared in the district court for his preliminary examination with appointed counsel, David Clark. Defendant waived the examination and entered a nolo contendere plea to a reduced charge of third-degree home invasion[2] with the factual basis being supported by the police report. The court advised defendant that this was "a five-year maximum felony." The prosecutor agreed to drop the habitual offender sentencing enhancement and dismiss the resisting arrest charge. At no time during this hearing did the court or counsel advise defendant of the elements of first or third-degree home invasion. Accordingly, there is no record indication that defendant understood at

---

[1] MCL 750.110a(2) provides:

[1] A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, [2] a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or [3] a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:

(a) The person is armed with a dangerous weapon.

(b) Another person is lawfully present in the dwelling. [Ordinals added.]

[2] MCL 750.110a(4) proscribes third-degree home invasion, in relevant part, as follows:

A person is guilty of home invasion in the third degree if the person does either of the following:

(a) [1] Breaks and enters a dwelling with intent to commit a misdemeanor in the dwelling, [2] enters a dwelling without permission with intent to commit a misdemeanor in the dwelling, or [3] breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a misdemeanor. [Ordinals added.]

-2-

that time that his conduct potentially satisfied the elements of an alternate theory of first-degree home invasion, making this plea arrangement very generous.

Four days later, defendant retained new counsel, John Ferguson. Defendant subsequently testified that Ferguson visited him in jail while he was represented by Clark and informed him that the charges were "BS," that he had been overcharged, and that Ferguson could arrange a misdemeanor plea. Ferguson has never refuted this testimony, and the trial court later found it to have been accurate. After convincing defendant to fire Clark, Ferguson immediately filed a motion to withdraw defendant's plea. Ferguson described that defendant entered his plea "[a]fter only a cursory probable cause conference" and without understanding that his nolo contendere plea "would be seen the same as a plea of guilty." Ferguson further contended in his motion that the police report did not provide the necessary factual support for defendant's home invasion conviction "because the crime of home invasion is dependent upon an element of proof that the defendant had some intent to commit a crime once inside." Ferguson averred that defendant only intended to lawfully enter a neighboring home in which he was staying. Ferguson described defendant's plea to the reduced felony charge as "a gross injustice" based on "the facts of the case."

The circuit court allowed defendant to withdraw his plea, but first inquired:

*Q*. He has pled no contest, a plea I typically don't accept, to a 5-year felony. And, the facts as I've read them are, he was witnessed by a police officer kicking in a door and standing over an 89-year-old woman ready to assault her. So, what he would rather do on those facts is go to trial on the 20-year felony?

*Mr. Ferguson*. Your Honor, yes.

*The Court*. You done the math on that?

*Mr. Ferguson*. I have, your Honor.

We've explained that, we've discussed the risks he's taking. The reality is this - -

The court interrupted defense counsel, asked the prosecutor if she was "ready to go to trial," and then declared the plea withdrawn. The court then advised defendant,

*The Court*. There will be no plea agreements, there will be no plea negotiations. There will be a trial on a 20-year felony.

Be careful what you wish for.

We're done.

*Mr. Ferguson*. Thank you, your Honor.

*The Court*. Last chance, [defendant], is this what you want to do? You want to go to trial on these facts on a 20-year felony?

-3-

*Mr. Ferguson.* May it please the Court - -

*The Court.* Oh no, he gets to say yes or no.

*Mr. Ferguson.* Fair enough, your Honor.

*The Court.* Yes or no?

*Defendant[].* I did not intend to harm - -

*The Court.* I don't want to hear about that.

I want to know whether you want a trial on a 20-year felony or you want to stand by a no contest plea to a 5-year? That's all I want to know.

Because you're not going to get a second chance at this deal and you've had plenty of time to talk to the new attorney.

Do you want this?

You're not stupid, you've got a 3.4 GPA, you're a smart guy. Is this what you want to do?

Because I will give you an opportunity to come in here in front of 12 jurors, you've read the pre-sentence report, you've seen the police reports. You really want to go to trial on a 20-year felony? Last chance.

*Defendant[].* Yes, your Honor.

*The Court.* All right, wish granted.

*Mr. Ferguson.* I take it the Court will notify us of a pretrial conference to discuss this?

*The Court.* There will be no pretrial conference, I'll give you a trial notice. This case has been through, we're done.

The prosecution then issued an amended felony information changing the theory for the first-degree home invasion charge. Rather than attempting to prove that defendant intended to commit an assault once inside Gregory's residence, the amended information advised that the prosecutor would establish that defendant committed first-degree home invasion under the third method provided in the statute: by breaking into Gregory's home (without regard to intent) and resisting arrest once inside.

The matter then proceeded to trial. Gregory passed away before trial and therefore was unable to testify. Defense counsel presented no evidence to establish that defendant was intoxicated on the night in question or to explain defendant's confusion caused by the similar looking houses in the neighborhood. And the court denied defendant's request for a jury

instruction on the lesser offense of entry without permission. The jury convicted defendant as charged. The court thereafter sentenced defendant to three to 20 years' imprisonment.

## II. POST-TRIAL PROCEEDINGS

With the assistance of his original attorney, Clark, defendant subsequently sought a new trial, arguing that Ferguson's assistance was constitutionally deficient. Defendant alleged that Ferguson improperly interpreted the home invasion laws when advising him to withdraw his plea to third-degree home invasion. Defendant also accused Ferguson of incorrectly informing him that the court would allow additional plea bargaining and then would not allow him to ask questions at the plea withdrawal hearing.

The circuit court agreed to conduct an evidentiary hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). Defendant's former girlfriend, Falon Babineau, testified that she contacted Ferguson on defendant's behalf. Ferguson "assured [Babineau] that he could help, that he could get the plea dismissed, that the process would start over, that [defendant] was over charged." Ferguson elaborated that defendant "would have an evidentiary hearing" and "the prosecutor would then realize their mistake in over charging him and that he would be offered a new deal that would be a misdemeanor." As a result of this conversation, Babineau paid Ferguson his requested retainer. Before plea withdrawal, Babineau conducted her own legal research, learned the elements of first-degree home invasion, and suspected that defendant had actually committed that offense. She expressed her concerns to Ferguson who told her that the law "was complicated and [she] didn't understand it." Ferguson also related his belief that Gregory would be a good witness for the defense, because "she will say she did not feel as if [defendant] was threatening her."

Babineau was present at the plea withdrawal hearing. She observed that defendant wanted to ask questions, but "Ferguson hushed him." After the hearing, Ferguson told Babineau and defendant's mother that the judge simply used "a scare tactic" by threatening defendant with a trial on a 20-year felony. In the weeks that followed, Ferguson finally admitted that the prosecutor would not consider a different plea deal. Ferguson revealed that his defense would be that defendant did not resist arrest inside Gregory's home and therefore did not commit a felony therein. Specifically, Ferguson intended to argue that defendant "just stood there and got shot with a taser." Aware that Gregory's health was declining, Ferguson also promised to secure a statement from the witness. Ultimately, Ferguson declared that he would rely upon an interview conducted by Clark's assistant, during which Ferguson believed Gregory stated that defendant "looked confused and not threatening, it should show he did not resist arrest."[3]

---

[3] Clark's assistant, Lindsay Geiger, testified on behalf of the defense at defendant's trial. Geiger recounted that Gregory expressed feeling fear that her door would be broken, but never mentioned being afraid for her "bodily safety." Gregory indicated that after defendant "was in the house for a few seconds, she heard a pop and then he was on the ground." However, Geiger never specifically asked Gregory if she felt threatened by defendant or whether defendant appeared confused.

Defendant testified that he had been prepared to plead nolo contendere to third-degree home invasion, understood the benefit of the reduced sentence, and was aware that the consequences were the same as pleading guilty. Defendant had also reviewed the presentence investigation report and knew his recommended minimum sentence was only zero to 17 months in county jail rather than prison. Defendant was also informed he qualified for boot camp. But Ferguson reached out to defendant and, as quoted above, promised him a better result based on Ferguson's erroneous interpretation of MCL 750.110a(2). Ferguson assured defendant that "the whole process was going to start over and that he could get . . . a better deal." Defendant first denied telling Ferguson that he needed to avoid a felony conviction because he wanted to open a restaurant and secure a liquor license, but on cross-examination admitted he had made this statement.

After the plea was withdrawn, defendant "asked [Ferguson] why the process hadn't started over." Ferguson informed defendant "that there were no more deals, that we were going to go to trial, that this is what he wanted. That he wouldn't have taken my case had he not thought we could win in trial. He could get me an unlawful entry plea if it came down to that." Defendant was "adamant" that Ferguson secure Gregory's testimony in a deposition, but Ferguson claimed he was awaiting permission from the prosecutor to speak to her. As a result, Gregory died before her testimony could be preserved.

Defendant described that he had intended all along to defend himself by explaining that he was highly intoxicated on the night in question. He had only recently moved into a home across the street from Gregory. He only entered Gregory's home because he believed he was in the right house. Based on this description, Ferguson informed defendant that he never formed the necessary intent for first-degree home invasion and could be convicted of, at the most, unlawful entry. Only after the prosecutor dismissed the separate resisting arrest charge did Ferguson advise defendant that "it doesn't have to be an intent crime, that the resisting arrest makes it home invasion."

The final witness at the *Ginther* hearing was attorney Ferguson. Defense counsel highlighted Ferguson's miscommunication of the offense elements to defendant as follows:

> *Q.* In your motion to withdraw [the plea], you indicated that you believe there was no intent. Your motion and brief says the police report is devoid of any fact that supports a conviction of home invasion because the crime of home invasion is dependent on the element that proved defendant had some intent to commit a crime once inside. Is that your belief on November 10 or 12?
>
> *A.* There were several elements for home invasion, one of which is you have to have intent to commit a crime in the home, I relied on that element as a way to try to create an argument on behalf of [defendant]. There are other elements that support home invasion, I didn't want to bring those up.

Later in the questioning, the prosecutor queried:

*Q.* Mr. Ferguson did you explain to Falon or your client or both that he could be convicted of home invasion first degree regardless of what he intended outside of the home?

*A.* Yeah. I don't remember when we first had that sort of conversation, but I remember talking to him fairly early on that your theory of the case as the People was that once you were in the home you committed a felony of resisting and opposing. And, the resisting and opposing as I understood the police report was based on the report he was coming at him with a balled up fist and tazed him accordingly.

Even so, Ferguson held to his stance that defendant was overcharged:

In my opinion he could have and should have been charged with breaking a dwelling and perhaps resisting and opposing separately, that would have exposed him to a five year instead of home invasion first degree, a 20 year, from the beginning. . . . [I]t was clear from my conversations with Ms. Gregory, she was not threatened by [defendant], she didn't see [defendant] threaten the officer. For that reason I didn't believe it was an appropriate charge to make against [defendant]. For that reason I think a plea to the felony was inappropriate . . . .

He further explained that the police report was insufficient to support a resisting arrest charge because it did not appear that defendant was aware that the responding officer was a police officer when he first turned around and had not resisted when the officer employed his Taser.

Ferguson claimed that his strategy was partly fueled by defendant's desire to avoid a felony conviction for business reasons. Defendant had communicated to Ferguson that he wanted to open a restaurant but would be unable to secure a liquor license with a felony conviction. Ferguson admitted that he told defendant that he would be able to explore "new plea agreements" but denied representing that the criminal proceedings would start from scratch.

Despite the court's admonition that no further plea negotiations would be permitted, Ferguson contacted the prosecutor's office and offered that defendant would plead to a misdemeanor charge. The prosecutor's office declined. After Gregory died, defendant asked Ferguson if they could reinstate the third-degree home invasion charge, but Ferguson told him the circuit court would not agree to this. Specifically, Ferguson testified, "Because I practiced enough with Judge Rodgers, once he said there is no more conference, he's not going to take any plea except the charge as charged." And Ferguson insisted that he tried to speak to his client before the plea withdrawal was finalized, but the court did not allow it.

Ferguson asserted that he personally spoke to Gregory in December. Gregory related that she did not see defendant threaten the police officer and did not feel threatened herself. In the 911 tape, Gregory did not scream for help, merely asking defendant, "who are you, what do you want, what are you doing here." Accordingly, Ferguson thought defendant would fare well at trial. Ferguson contended that he had actually attempted to depose Gregory before trial, but her rapidly declining health prevented it.

Ultimately, the trial court denied defendant's motion for a new trial. The court noted that defendant had been "provided with highly experienced and competent Court-appointed counsel," who was able to obtain a plea agreement for a lesser charge, with a much shorter penalty, and he "did not have to admit his behavior under oath."

The Defendant then decided that he could get an even better deal by retaining a private attorney. This attorney, John Ferguson, told the Defendant he had been overcharged, that the Prosecutor's Office needed a reality check and that he believed he could negotiate a plea to a misdemeanor. The Defendant chose to discharge his Court-appointed counsel and retain Mr. Ferguson.

At the withdrawal hearing, the court "cautioned Defendant in the strongest possible terms that this was not a wise decision." Moreover,

> There is no question that the decision to withdraw the plea was ill advised. The undisputed facts were that the intoxicated Defendant had forcibly entered the home of an elderly woman late at night. The admitted presence of the woman in her own home together with the forcible entry would not support a charge on a lesser offense. Further, it has never been this Court's practice to routinely accept no-contest pleas and enable alcoholics or binge-drinking felons to obtain pleas without admitting responsibility for their behavior. It was made clear to the Defendant at the time of his motion that if he withdrew his plea there would be no further negotiations and we would proceed directly to trial.

The court concluded:

> The focus of Defendant's motion centers on . . . whether defense counsel made a serious mistake during a court proceeding. Here, the alleged mistake is counseling the Defendant to withdraw his plea in the hopes of negotiating a misdemeanor plea which would allow him to pursue his goal of opening a restaurant and establishing a bar. As previously indicated the Defendant is not incompetent but has at least average intelligence. He had read the police report and was well aware of the People's opinion that he had committed resisting and opposing a police officer while inside the home. He knew he could not testify due to a claimed lack of memory. His Court-appointed lawyer had obtained for him an extraordinarily favorable plea agreement on the facts. While the Defendant hoped that he might obtain a plea to a misdemeanor, the People were neither under an obligation to offer one nor had they ever indicated any inclination to do so. . . .

> Having made the counseled decision to withdraw his plea and to proceed to trial and now having been convicted, the Defendant wishes to wash out that conviction and start the process over. What the Defendant ignores is the People having obtained a conviction, have no obligation to offer him a plea agreement whatsoever let alone to reinstate that which the Defendant rejected many months ago.

The Defendant has been calculating in his behavior throughout these proceedings. . . .  When the siren call of Mr. Ferguson came again, he chose to reject the certainty of a 5-year plea and 0- to 17-months sentencing guidelines for the uncertainty of a trial result and any further plea negotiations.  His retained attorney discussed with him the various risks associated with rejecting the plea but admitted that he supported the Defendant's decision to proceed to trial.  Given that the Defendant's state of intoxication and intent were not defenses, this was a highly risky choice but one made after a plea had already been entered and with substantial time to think and reflect upon the choice.

. . .  Here, the Defendant has failed to establish the factual predicate for his claim of ineffective assistance of counsel.  You cannot simply roll the dice, proceed to trial, receive an adverse verdict and then suggest that it is your lawyer's fault and you should be allowed to start anew.  The Defendant was properly charged with [first-degree home invasion] and properly convicted of doing so.  The withdrawal of the plea and gamble on the hopes of a misdemeanor conviction proved to be a losing bet but not one which this Court choses to enable by laying culpable blame on his attorney.  Mr. Ferguson's support of the Defendant's bad decision was foolish.  But, as is so often the case, the Defendant is the author of his own misfortune.

### III. DEFENSE COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE

I cannot agree with my colleagues' determination that defense counsel's performance was constitutionally adequate.  Counsel advised plea withdrawal based on ignorance of the law, essentially encouraging defendant to play Russian Roulette with a gun the prosecution had fully loaded.  "As at trial, a defendant is entitled to the effective assistance of counsel in the plea-bargaining process." *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014).  "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it," *Lafler v Cooper*, 566 US 156, 168; 132 S Ct 1376; 182 L Ed 2d 398 (2012), and consequently, whether to withdraw a plea once it enters.  See *Commonwealth v Bradley*, 552 Pa 492; 715 A2d 1121 (1998).  "To establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness,' " measured in terms of " 'prevailing professional norms.' " *Wiggins v Smith*, 539 US 510, 521; 123 S Ct 2527; 156 L Ed 2d 471 (2003), quoting *Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

The majority notes that defendant's decision to withdraw his plea was "multi-faceted."  I acknowledge that fact.  However, it was incumbent upon attorney Ferguson to accurately advise defendant *before he withdrew his plea* that first-degree home invasion can be established by more than one method, that the conduct alleged in the police report could establish defendant's guilt on alternate grounds, and that the State had the authority to amend the felony information to pursue prosecution on an alternate ground.  There is no evidence that Ferguson communicated this crucial information before defendant forfeited his highly advantageous plea deal.  Had Ferguson done so, defendant would be in a very different position today.

Prevailing professional norms, at a minimum, require an attorney to read and understand the statutes under which his or her criminal defendant client has been charged. This is axiomatic under the Michigan Rules of Professional Conduct. The commentary to MRPC 1.1, the rule requiring competency in representation, provides: "Competent handling of a particular matter includes inquiry into and analysis of the factual *and legal elements* of the problem, and use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation." (Emphasis added.) On June 1, 2016, the Supreme Court conditionally approved minimum standards for appointed defense counsel. The first standard defines the level of competence necessary to be constitutionally effective. It provides:

> Counsel shall have *reasonable knowledge of substantive Michigan and federal law, constitutional law, criminal law, criminal procedure, rules of evidence, ethical rules and local practices.* Counsel has a continuing obligation to have reasonable knowledge of the changes and developments in the law. "Reasonable knowledge" as used in this standard means knowledge of which a lawyer competent under MRPC 1.1 would be aware. [Admin Order 2016-2, 499 Mich xcvii, ci (2016) (emphasis added).]

This standard was subsequently approved by Department of Licensing and Regulatory Affairs. See <http://michiganidc.gov/standards/> (accessed July 12, 2017).

General agency law similarly demands an attorney adequately prepare by acquainting himself or herself with relevant law.

> [An] agent . . . should know what a person of ordinary experience and intelligence would know, and in addition, what he would know if, having the knowledge and intelligence which he has or purports to have, he were to use due care in the performance of his duties to the other. [1 Restatement, Agency 2d, § 10, p 51.]

If a person is "a professional agent," "he represents that he has the knowledge which is standard for the profession in which he is employed. . . ." *Id.*, cmt c.

Parallels can be drawn to legal malpractice standards as well. In *Simko v Blake*, 448 Mich 648, 650-651; 532 NW2d 842 (1995), a criminal defendant who was jury convicted but vindicated on appeal filed a legal malpractice action against his trial counsel. The Court held "that attorneys must only act as would an attorney of ordinary learning, judgment, or skill under the same or similar circumstances." *Id.* at 650. In doing so, counsel must "use reasonable skill, care, discretion and judgement. . . ." *Id.* at 656 (quotation marks and citations omitted). "An attorney is never bound to exercise extraordinary diligence, or act beyond the knowledge, skill, and ability ordinarily possessed by members of the legal profession." *Id.* Stated differently, an attorney "must act with the skill, learning, and ability of the 'average practitioner of law.' " *Id.* at 657.

These principles have been described similarly and simply by the California Supreme Court:

> [A]n attorney does not ordinarily guarantee the soundness of his opinions and, accordingly, is not liable for every mistake he may make in his practice. He is

expected, however, *to possess knowledge of those plain and elementary principles of law which are commonly known by well informed attorneys*, and to *discover those additional rules of law which, although not commonly known, may readily be found by standard research techniques.* If the law on a particular subject is doubtful or debatable, an attorney will not be held responsible for failing to anticipate the manner in which the uncertainty will be resolved. But even with respect to an unsettled area of the law, we believe an attorney assumes an obligation to his client to undertake reasonable research in an effort to ascertain relevant legal principles and to make an informed decision as to a course of conduct based upon an intelligent assessment of the problem. . . . [*Smith v Lewis*, 13 Cal 3d 349, 358-359; 118 Cal Rptr 621; 530 P2d 589 (1975), overruled in part on other grounds *In re Marriage of Brown*, 15 Cal 3d 838; 126 Cal Rptr 633; 544 P2d 561 (1976) (citations omitted, emphasis added).]

Any attorney accepting a retainer or appointment in a criminal matter must prepare for the task by doing at least some homework. A major preparatory step is learning the nature of the charges against the client, both factually and legally. Employing reasonable skill means gaining basic legal knowledge of the case. An essential building block of that knowledge is the statute under which the criminal defendant is charged. A reasonable attorney of average skill would read that statute.

As noted, MCL 750.110a(2) provides multiple methods by which a person may commit first-degree home invasion: by breaking and entering a dwelling or entering without permission "with intent to commit a felony, larceny or assault" inside or by breaking and entering or entering without permission and actually committing "a felony, larceny, or assault." The prosecution initially charged defendant of breaking and entering with intent to commit a crime within. The prosecutor also charged defendant with having resisted or obstructing a police officer. Ferguson's strategy of attacking the evidentiary support for the home invasion theory initially pled was sound. But the factual allegations in the information plainly supported a charge on the alternate ground: that defendant actually committed an offense inside Gregory's home. An attorney of ordinary skill would understand that the prosecution could and likely would amend the felony information after defendant withdrew his plea. MCR 6.112(H) gives the trial court discretion to "permit the prosecutor to amend the information . . . unless the proposed amendment would unfairly surprise or prejudice the defendant." As the factual allegations remained the same and could have supported a charge on the amended theory all along, defendant would have no ground to assert unfair surprise or prejudice and avoid amendment.

Prevailing professional norms required Ferguson to advise defendant of the potential dangers of withdrawing his plea. And yet Ferguson failed to do so in a timely fashion.[4]

---

[4] An attorney acting within prevailing professional norms may advise a client who proclaims his innocence to proceed to trial "no matter how 'good' [a plea] deal may appear." *Burt v Titlow*, ___ US ___; 134 S Ct 10, 14; 187 L Ed 2d 348 (2013) (quotation marks and citation omitted). The current defendant did not claim innocence, merely intoxication. And a quick read of the

Contrary to my colleagues, I cannot ignore this gross legal error by calling it "strategy." This was pure ignorance, not a planned or thoughtful tactic.

Ferguson later essentially conceded that he had performed ineffectively by encouraging his client to withdraw his plea and attempting continued plea negotiations despite full awareness that the circuit court would not permit a new plea. At the plea withdrawal hearing, the court advised defendant, "There will be no plea agreements, there will be no plea negotiations." Ferguson admitted at the *Ginther* hearing, "Because I practiced enough with Judge Rodgers, once he said there is no more conference, he's not going to take any plea except the charge as charged." And yet Ferguson did not ask for time to confer with his client at the plea withdrawal hearing. The court cut off Ferguson's arguments but never communicated that it would deny a recess for Ferguson to advise his client further. Rather, Ferguson allowed defendant to go forward and withdraw his plea, knowing that defendant did not understand that the prosecution could change its theory of the offense and that the prosecutor and the court would not entertain further negotiations. Obstinately sticking to his prehearing strategy was not in his client's interests, a fact that Ferguson ignored to his client's peril. Ferguson's ineffectiveness at this stage is particularly glaring in light of Judge Rodger's invitation that Ferguson reconsider his plea-withdrawal strategy. A competent attorney would have done just that.

In *Lafler*, 566 US 156, the defendant was similarly provided poor advice. The defendant was charged with assault with intent to murder and possession of a firearm during the commission of a felony, and misdemeanor possession of marijuana, and was notified that his sentence would be enhanced as a habitual offender fourth. *Id*. at 161. The prosecution twice offered to dismiss two of the charges and to recommend a sentence of 51 to 85 months for the other two. *Id*. The defendant admitted his guilt and expressed a willingness to accept the offer. He later rejected it, however, on the advice of his counsel. Counsel had erroneously advised that the prosecution could not prove defendant's intent to murder because the victim had been shot below the waist. *Id*. The defendant was convicted on all counts and was sentenced to 185 to 360 months' imprisonment. *Id*. The prosecution was honest enough to admit that the defendant was deprived of his constitutional right to the effective assistance of counsel where defense counsel provided clearly erroneous advice. *Id*. at 162-163. The factual scenario here is remarkably similar, but the prosecution has declined to acknowledge the plain truth that Ferguson gave his client unreasonable advice based on the facts and law.

## IV. COUNSEL'S DEFICIENCY WAS PREJUDICIAL

Defendant was clearly prejudiced by counsel's deficiencies. To warrant relief, a defendant complaining of ineffective assistance in the plea-taking process must also demonstrate that "the outcome of the plea process would have been different with competent advice." *Lafler*, 566 US at 163. When a defendant rejects a plea deal and proceeds to trial,

> a defendant must show that but for the ineffective advice of counsel there is a
> reasonable probability that the plea offer would have been presented to the court

---

relevant statute would have informed counsel that defendant's alleged inability to form intent did not negate the elements of the charged offense.

(*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. [*Id.* at 164.]

All of these conditions are met. The prosecutor offered a favorable plea deal, defendant and the district court accepted it, and defendant's sentence would have been lighter had he been convicted of third-degree home invasion rather than withdrawing his plea and being convicted after trial of first-degree home invasion.

Ferguson's errors were indisputably prejudicial. Despite that the facts supported a first-degree home invasion charge, attorney Clark negotiated a deal for third-degree home invasion. The lesser charge carries only a five-year, as opposed to 20-year, maximum sentence. Defendant's preliminary offense and prior record variable scores were favorable, coming with a minimum sentencing range of 0 to 17 months. Defendant likely would have served time in county jail, rather than state prison, and was even eligible for boot camp. These benefits were not available with his first-degree home invasion conviction. Indeed, defendant's minimum sentence after trial was three years. See *id*. at 168 ("[P]rejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence.").

## V. JUDICIAL WARNINGS DO NOT REMEDY THE CONSTITUTIONAL ERROR

Further, the majority's focus on the trial court's warning is misplaced. While I am sympathetic to Judge Rodgers' frustration with defendant for failing to follow his warning that plea withdrawal was a bad idea, judicial warnings do not substitute for the effective assistance of counsel. Contrary to the majority's analysis, the Supreme Court stressed in *Padilla v Kentucky*, 559 US 356, 371; 130 S Ct 1473; 176 L Ed 2d 284 (2010), another case involving inaccurate advice provided during the guilty plea negotiation process, that "[i]t is quintessentially the duty of counsel to provide her client" with appropriate advice regarding critical legal issues.

[T]he judicial plea colloquy is no remedy for counsel's deficient performance in fulfilling these obligations. The colloquy merely "assist[s] the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary." *McCarthy v. United States*, 394 US 459, 465; 89 S Ct 1166; 22 L Ed 2d 418 (1969). Moreover, because a judge "cannot investigate the facts[ ] . . . or participate in those necessary conferences between counsel and accused which sometimes partake of the inviolable character of the confessional," a judge cannot "discharge the obligations of counsel for the accused." *Powell v Alabama,* 287 U S 45, 61; 53 S Ct 55; 77 L Ed 158 (1932). [*Marroquin v United States*, 480 Fed Appx 294, 299 (CA 5, 2012) (second and third alterations in original).]

More recently, in *Lee v United States*, 582 US ___; ___ S Ct ___; ___ L Ed 2d ___ (Docket No. 16-327, decided June 23, 2017), the Supreme Court re-emphasized this point. In *Lee*, slip op at 2-3, the criminal defendant repeatedly expressed concern about deportation to the

-13-

country he had left as a child and where he had no ties or connections. His attorney expressly advised him "that he would not be deported as a result of pleading guilty" to a significantly reduced charge with a much lighter sentence, as the prosecution had not raised deportation as a possible penalty in the plea agreement. *Id*. at 2. Guided by counsel's erroneous advice, the defendant responded to the trial court's inquiry during the plea colloquy that he did not understand that deportation was a potential result. *Id*. at 11. The court allowed the defendant to confer with his attorney, who assured the defendant that this "was a 'standard warning.' " *Id*. The Supreme Court noted, "There has been no suggestion her that the sentencing judge's statements at the plea colloquy cured any prejudice from the erroneous advice of . . . counsel." *Id*. at 11 n 4. Indeed, had such a suggestion been made, the Court would have quickly rejected it based on *Padilla*. See also *United States v Batamula*, 788 F3d 166, 173 (CA 5, 2015) ("[T]he Supreme Court has long contrasted the unique and critical obligations of defense counsel during the plea bargaining process with the far more limited role of a district court to ensure a minimally valid guilty plea, further supporting our conclusion that the judicial warning of 'likely' deportation does not prevent prejudice caused by counsel's deficient performance.").

Judge Rodgers was aware of the facts of defendant's case contained in the police report and that defendant had been offered (and accepted) a plea deal to a lesser charge. Judge Rodgers was not aware of the information and advice that Ferguson had relayed, however. During the plea-withdrawal colloquy, no one advised Judge Rodgers or defendant of Ferguson's legally erroneous conclusion that defendant could not be convicted of first-degree home invasion. While Judge Rodgers' admonishment to "be careful what you wish for" factors into my analysis, it does not excuse Ferguson's ineffective assistance or diminish the prejudice caused by the plea withdrawal.

## VI. APPROPRIATE RELIEF

Inexplicably, defendant has never sought the proper relief for Ferguson's constitutionally deficient performance. Attorney Clark sought a new trial in the circuit court rather than the appropriate remedy: a reoffer of the original plea. On appeal, defendant seeks the reversal of his conviction and release from prison. However, the proper remedy under these circumstances is "to require the prosecution to reoffer the plea proposal." *Lafler*, 566 US at 171. Pursuant to MCR 7.216(A)(7), this Court may "enter any judgment or order or grant further or different relief as the case may require." Having found counsel constitutionally ineffective, *Lafler* instructs that the sole remedy is to require the prosecution to reoffer the plea proposal. "Once this has occurred, the judge can then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed." *Lafler*, 566 US at 171. *Lafler* provides further guidance regarding the proceedings on remand, as follows:

> In implementing a remedy in both of these situations, the trial court must weigh various factors; and the boundaries of proper discretion need not be defined here. Principles elaborated over time in decisions of state and federal courts, and in statutes and rules, will serve to give more complete guidance as to the factors that should bear upon the exercise of the judge's discretion. At this point, however, it suffices to note two considerations that are of relevance.

First, a court may take account of a defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her actions. Second, it is not necessary here to decide as a constitutional rule that a judge is required to prescind (that is to say disregard) any information concerning the crime that was discovered after the plea offer was made. The time continuum makes it difficult to restore the defendant and the prosecution to the precise positions they occupied prior to the rejection of the plea offer, but that baseline can be consulted in finding a remedy that does not require the prosecution to incur the expense of conducting a new trial. [*Id.* at 171-172.]

Informed by *Lafler*, I would remand to the district court judge who originally accepted defendant's guilty plea for further proceedings in accordance with *Lafler*'s guidelines.

/s/ Elizabeth L. Gleicher